Vivek Shah
1301 N. Broadway, Ste. 32167
Los Angeles, CA 90012
Telephone: (224) 246-2874
Email: newvivekshah@gmail.com



FILED

CLERK, U.S. DISTRICT COURT

6/13/2026

CENTRAL DISTRICT OF CALIFORNIA

BY ____ag____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

FEE PAID

| | |
|---|---|
| VIVEK SHAH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>IMPRINT.COM LLC,<br><br>　　　　Defendant. | Case No. 2:26-cv-06526- MWC-PD(x)<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE FEDERAL WIRETAP ACT, 18 U.S.C. §§ 2511 & 2520;**<br><br>**(2) VIOLATIONS OF CAL. PENAL CODE § 631(a) (THIRTY SEPARATE VIOLATIONS); AND**<br><br>**(3) BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. This is a civil action under the federal Wiretap Act, 18 U.S.C. §§ 2511 and 2520; the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); and California contract law. It arises from Defendant Imprint.Com LLC's real-time interception — and aiding, agreeing with, employing, and procuring of third parties' real-time interception — of the contents of Plaintiff's electronic communications while Plaintiff used the on-site search function of Defendant's website, https://imprint.com (the "Website").

2. Defendant deliberately embedded, configured, and maintained third-party advertising code on the Website — including the Meta Pixel operated by Meta Platforms, Inc. ("Meta") and advertising tags operated by Google LLC ("Google"), including Google's DoubleClick conversion infrastructure (collectively, the "Tracking Companies") — that operates as a hidden, automated wiretap on the Website's search bar.

1

3. When Plaintiff typed a search query into the Website's search bar, Defendant's embedded third-party code caused the exact, verbatim contents of that query to be transmitted contemporaneously, in real time, from Plaintiff's browser to servers operated by the Tracking Companies, embedded in the parameters of outbound network requests, while the communication was in transit and was being sent and received within the State of California.

4. On August 12, 2025, Plaintiff submitted a search query through the Website's search bar and, inspecting the Website's network activity, documented his verbatim search terms being transmitted in the same instant to Meta (in a Pixel request expressly labeled as a "Search" event) and to Google (through two separate advertising endpoints), in each case linked to a persistent identifier the Tracking Companies use to tie web activity to a specific individual's advertising identity.

5. These interceptions occurred without Plaintiff's prior consent. Plaintiff did not assent to any privacy policy, terms of use, or tracking disclosure before the interceptions occurred. The Ninth Circuit has held that disclosure or consent obtained only after interception has begun is no consent at all.

6. Section 631(a) imposes liability on anyone who willfully and without the consent of all parties reads, attempts to read, or learns the contents of a communication while in transit, and — in its fourth clause — on anyone who "aids, agrees with, employs, or conspires with" another to do so. The federal Wiretap Act likewise imposes liability on anyone who intentionally intercepts, or intentionally procures another to intercept, the contents of an electronic communication. The Tracking Companies intercepted the contents of Plaintiff's communications; Defendant aided, agreed with, employed, and procured them to do so.

7. Plaintiff seeks statutory damages, actual and punitive damages, contract damages, and injunctive relief as authorized by 18 U.S.C. § 2520, Cal. Penal Code § 637.2, and California law.

**JURISDICTION AND VENUE**

2

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's First Cause of Action arises under the laws of the United States — the federal Wiretap Act, 18 U.S.C. §§ 2511 and 2520.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state-law claims, which arise from the same case or controversy — the same interceptions of the same communications — as Plaintiff's federal claim.

10. This Court additionally and independently has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). The parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Plaintiff Vivek Shah is a citizen of California, domiciled in Los Angeles County.

12. Defendant Imprint.Com LLC is a limited liability company. For purposes of diversity jurisdiction, a limited liability company is a citizen of every State of which its members are citizens. Upon information and belief, the sole member of Imprint.Com LLC is Mashnoon Ahmed, a natural person who is a citizen of Texas and is domiciled at 5106 Doliver Dr, Houston, TX. Imprint.Com LLC is therefore a citizen of Texas, and of no other State. Complete diversity of citizenship exists between Plaintiff and Defendant.

13. A plaintiff's good-faith allegation of the amount in controversy controls unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. Plaintiff's claims place well in excess of $75,000 in controversy, itemized as follows.

14. Cal. Penal Code § 637.2(a)(1) authorizes statutory damages of $5,000 "per violation," without proof of actual damages, § 637.2(c). Each discrete interception is a separate violation. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144 (9th Cir. 2020); *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021). Plaintiff submitted no fewer than ten distinct search queries through the Website's search bar during the limitations period, and the verbatim contents of each were separately acquired by no fewer than three documented third-party recipients — Meta, Google's DoubleClick endpoint, and Google's user-list endpoint — each acquisition a discrete, separately actionable violation. Ten queries × three interceptions = at least thirty violations × $5,000 = $150,000.

3

15. Under 18 U.S.C. § 2520, Plaintiff is entitled to the greater of actual damages or statutory damages of the greater of $100 per day or $10,000, plus punitive damages and attorney's fees.

16. Plaintiff seeks contract damages and injunctive relief under Cal. Penal Code § 637.2(b) and 18 U.S.C. § 2520(b)(1). In a single-plaintiff case the amount in controversy includes the cost to the defendant of complying with the requested injunction, which here would require Defendant to audit and reconfigure a tracking architecture integrated throughout the Website, at a cost reasonably estimated to exceed $50,000.

17. It does not appear to a legal certainty that Plaintiff's claims are for $75,000 or less. The statutory-damages component alone exceeds the threshold twofold.

18. This Court has specific personal jurisdiction over Defendant. Under *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc), an interactive platform expressly aims its wrongful conduct at California when its forum contacts are its own deliberate choice and not random, isolated, or fortuitous — even where it cultivates a nationwide audience for commercial gain.

19. Defendant operates the Website as an interactive commercial platform accessible to and used by California residents, including Plaintiff. Defendant deliberately embedded the Tracking Companies' code so that visitor data — including the data of its California visitors — would be collected, transmitted, and exploited for advertising revenue. On information and belief, Defendant's advertising stack geolocated Plaintiff as a California visitor at the moment of each interception and monetized that fact. Plaintiff's claims arise directly out of those California-directed contacts.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims occurred in this District: Plaintiff was located in Los Angeles County when each interception occurred, the intercepted communications originated here, and the injury was suffered here.

**PARTIES**

4

21. Plaintiff Vivek Shah is, and at all relevant times was, a natural person and citizen of California residing in Los Angeles County.

22. Defendant Imprint.Com LLC is a limited liability company that, upon information and belief, has a single member, Mashnoon Ahmed, a citizen of Texas. Defendant owns and operates the Website and, at all relevant times, exercised exclusive control over the Website's source code, including the decision to embed, configure, and maintain the third-party tracking code described herein.

23. Whenever this Complaint refers to acts of Defendant, those acts were authorized, directed, or ratified by Defendant's members, officers, managing agents, or employees acting within the scope of their authority.

## FACTUAL ALLEGATIONS

### A. The Website's Search Function and Plaintiff's Search Communications

24. The Website includes a search bar inviting visitors to type free-form text queries to locate products and information. A search query is a communication from the visitor to Defendant: the visitor composes a message — the search terms — and transmits it by wire to Defendant's server, which responds with results. When a visitor submits a query, the Website navigates to a results page whose URL embeds the visitor's verbatim search terms as a query-string parameter, in the form https://imprint.com/shop/products?keyword=[SEARCH TERMS]. Defendant designed and controls this URL structure.

25. During the limitations period, on no fewer than ten separate occasions within the one-year period preceding the filing of this Complaint, Plaintiff accessed the Website from his computer while located in Los Angeles County, California, and submitted distinct search queries through the Website's search bar, each composed of unique search terms.

26. On August 12, 2025, Plaintiff submitted a search query through the Website's search bar and contemporaneously inspected the resulting network activity, documenting the interceptions described in Paragraphs 29 through 32 below. Each of Plaintiff's queries during the limitations period consisted of unique terms Plaintiff composed and conveyed

to Defendant alone, and disclosed information about Plaintiff's interests and activity that Plaintiff reasonably regarded as private.

27. Plaintiff reasonably expected that the words he typed into Defendant's search bar were a private exchange between himself and Defendant — not a communication being silently duplicated, in real time, to two of the largest commercial data-collection enterprises on the internet and linked there to his advertising identity.

## B. The Interception Architecture

28. Unknown to Plaintiff at the time of his communications, Defendant had embedded in the Website's code tracking scripts supplied by Meta and Google, each selected and configured by Defendant to execute automatically in every visitor's browser on page load — including search-results pages whose URLs Defendant designed to embed visitors' verbatim search terms.

29. **The Meta Pixel.** Defendant installed the Meta Pixel under Defendant's Pixel ID 651576382963165. When Plaintiff submitted his search, the Pixel fired a GET request from Plaintiff's browser to https://www.facebook.com/tr/, transmitting to Meta, among other things: Defendant's Pixel ID; an ev=Search event expressly identifying the transmission as a search; a dl parameter containing the complete results-page URL — *including Plaintiff's verbatim search terms* (dl=https%3A%2F%2Fimprint.com%2Fshop%2Fproducts%3Fkeyword%3D…); Plaintiff's screen dimensions (sw=1536, sh=864); a millisecond timestamp (ts=1754998389181); and the value of Meta's _fbp browser-identifier cookie (fbp=fb.1.1754998369772.819915576606855758), which Meta uses to match web activity to a specific Meta advertising profile. Meta's server returned HTTP 200.

30. **Google — DoubleClick conversion endpoint.** Defendant installed Google advertising tags configured under conversion ID 978072982. When Plaintiff submitted his search, a GET request fired from Plaintiff's browser to https://googleads.g.doubleclick.net/pagead/viewthroughconversion/978072982/, transmitting to Google a url parameter containing the complete results-page URL *including Plaintiff's verbatim search term*; the page title (tiba=Search - Imprint.Com); Plaintiff's

screen dimensions (u_w=1536, u_h=864); and a persistent advertising identifier (auid=53052419…). Google's server returned HTTP 200.

31.    **Google — user-list endpoint.** In the same sequence, a GET request fired from Plaintiff's browser to https://www.google.com/pagead/1p-user-list/978072982/, again transmitting the complete results-page URL *including Plaintiff's verbatim search term*, together with a view-through-conversion flag (is_vtc=1) and a Google identity token (cid=CAQSGEA2…). Google's server returned HTTP 200. Through this endpoint Google adds the visitor to remarketing and Customer Match audiences keyed to Google's identifiers.

32.    Plaintiff documented these three transmissions by inspecting the Website's network activity at the time of his search. When Plaintiff filtered the page's outbound network traffic for his own search term, the filter matched many additional requests — 17, 18, and 20 of the requests in three successive inspections — indicating that Plaintiff's verbatim search term left his browser for third-party endpoints repeatedly on a single search. The thirty violations alleged below conservatively count only the three documented recipients.

33.    The same architecture, operating automatically, uniformly, and indiscriminately, intercepted each of Plaintiff's other search queries during the limitations period in the identical manner.

**C. The Interceptions Occurred in Real Time, While the Communications Were in Transit**

34.    Each transmission occurred contemporaneously with Plaintiff's communication to Defendant, as part of the same page-load sequence triggered by Plaintiff's submission of his query. The millisecond timestamps Plaintiff observed — the Meta request at epoch 1754998389181 and the Google requests at epoch 1754998389228, approximately forty-seven milliseconds apart — confirm machine-speed, real-time acquisition during the communication exchange. This was not retrieval from storage after the fact. *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025).

35.    The simultaneous, unauthorized duplication and forwarding of an unknowing user's communications to third parties is precisely the conduct the Ninth Circuit has condemned. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (permitting

"the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion").

### D. No Prior Consent

36. Section 631(a) and the federal Wiretap Act require consent given *before* the interception. Consent obtained after interception has begun is no consent at all. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022).

37. Defendant obtained no consent from Plaintiff, prior or otherwise, to the interception of the contents of his communications by the Tracking Companies. At no time before discovering the interceptions did Plaintiff agree or assent to any privacy policy, terms of use, or tracking disclosure of the Website.

38. To the extent the Website displayed or linked any privacy policy or terms purporting to disclose data collection, any such disclosure was, as to Plaintiff, at most retroactive and therefore legally insufficient to establish prior consent. *Javier*, *supra*; *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at 9 (N.D. Ill. Oct. 1, 2024). Plaintiff's later review of the Website's terms — undertaken only after he discovered the interceptions, to identify the proper party against whom to seek relief — cannot retroactively supply consent to interceptions that had already occurred.

### E. The Tracking Companies Are Third-Party Eavesdroppers Acting for Their Own Purposes

39. Neither Meta nor Google is a party to the communications between Plaintiff and Defendant. Each is a separate enterprise that acquired the contents of Plaintiff's communications for its own commercial exploitation — not a passive recording instrument used solely for Defendant's benefit.

40. Meta matched the transmission to Plaintiff's Meta advertising profile via the _fbp cookie carried in the same request, logged a "Search" event against that profile, and incorporated the data into its behavioral-profiling and ad-targeting systems. Google incorporated the data into ad selection, conversion measurement, and remarketing and Customer Match audiences keyed to the auid and identity token carried in the same requests. Each thereby

linked Plaintiff's verbatim search content to Plaintiff's persistent, identity-linked advertising identifiers.

41. Each Tracking Company accordingly possessed both the capability and the practice of using the intercepted contents for its own purposes, independent of any service to Defendant — the dispositive consideration distinguishing a third-party eavesdropper from a mere recording tool.

**F. Defendant Aided, Agreed With, Employed, and Procured the Tracking Companies**

42. The interceptions occurred because Defendant made them occur. Defendant registered its own accounts and identifiers with each Tracking Company (including Meta Pixel ID 651576382963165 and Google conversion ID 978072982); inserted each vendor's JavaScript into the Website's source code; configured the tags to execute on every page, including search-results pages whose URLs Defendant designed to embed visitors' verbatim search terms; and maintained that architecture throughout the relevant period.

43. Defendant knew what the code does. Each vendor's documentation, directed at website operators like Defendant, describes precisely what data its tag collects and transmits, and Defendant's agreements with each vendor govern that collection. Defendant profited from the arrangement through advertising revenue, audience-building, retargeting, and conversion measurement.

44. By intentionally embedding, configuring, maintaining, and profiting from the interception architecture, Defendant aided, agreed with, employed, conspired with, and procured each Tracking Company to read and learn the contents of Plaintiff's communications while in transit.

45. Plaintiff has suffered a concrete, particularized, and actual injury in fact, fairly traceable to Defendant's conduct and redressable by this Court.

46. The interception of the *contents* of Plaintiff's communications — the verbatim search terms he composed and transmitted — is a concrete invasion of an interest long protected at common law: the privacy of one's communications against secret acquisition by uninvited third parties. This harm bears a close relationship to the harms redressed by the common-

law actions for intrusion upon seclusion and for the unauthorized interception of private communications.

47.    Plaintiff's injury is not a bare statutory violation and is not the mere collection of device, browser, or other generic metadata. Plaintiff pleads the acquisition of the *contents* of his communications — the substance of the messages he composed — and their linkage, at the moment of interception, to persistent identifiers that the Tracking Companies use to tie web activity to a specific person's advertising identity. The Meta request expressly logged a "Search" event carrying Plaintiff's _fbp identifier; the Google requests carried Plaintiff's auid and an identity token. This is precisely the acquisition of private, identity-linked information whose absence defeated standing in the metadata cases.

48.    Plaintiff suffered the disclosure of identity-revealing message content to commercial surveillance enterprises; the linkage of that content to his identity through the Tracking Companies' own cookies and identifiers; the loss of control over his personal information and the diminution of its value, for which an established commercial market exists; and distress and a chilling of his willingness to communicate freely with websites.

## FIRST CAUSE OF ACTION
### Violations of the Federal Wiretap Act, 18 U.S.C. §§ 2511 & 2520

49.    Plaintiff realleges and incorporates the preceding paragraphs.

50.    Plaintiff's search queries were "electronic communications" within 18 U.S.C. § 2510(12).

51.    The verbatim search terms Plaintiff transmitted are the "contents" of those communications within 18 U.S.C. § 2510(8) — "the substance, purport, or meaning" of the communication, not record information. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *In re Facebook Tracking*, 956 F.3d at 605; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024).

52.    Each Tracking Company intentionally intercepted the contents of Plaintiff's communications — by means of a device, namely its tracking code executing in Plaintiff's browser together with its receiving servers — while those communications were in transit, in violation of 18 U.S.C. § 2511(1)(a).

10

53. Defendant intentionally procured, aided, and caused the Tracking Companies to intercept the contents of Plaintiff's communications, in violation of 18 U.S.C. § 2511(1).

54. The interceptions are not protected by 18 U.S.C. § 2511(2)(d). The Tracking Companies were not parties to Plaintiff's communications. And to the extent Defendant asserts it was a party and consented, the communications were intercepted for the purpose of committing a tortious act — the invasion of Plaintiff's privacy and the unauthorized commercial exploitation of the contents of his communications — separate and apart from the act of interception itself.

55. Plaintiff did not consent to the interceptions.

56. Pursuant to 18 U.S.C. § 2520, Plaintiff is entitled to recover the greater of actual damages or statutory damages of the greater of $100 per day or $10,000; punitive damages; reasonable attorney's fees and costs; and preliminary, equitable, and declaratory relief.

## SECOND CAUSE OF ACTION

### Violations of Cal. Penal Code § 631(a) — Thirty Separate Violations

57. Plaintiff realleges and incorporates the preceding paragraphs.

58. Plaintiff's search queries were "communications" within § 631(a): messages composed by Plaintiff and transmitted by wire from his browser in California to Defendant's servers.

59. The verbatim search terms — transmitted to the Tracking Companies — are the "contents" of those communications, not record information. *In re Zynga*, 750 F.3d at 1106; *In re Facebook Tracking*, 956 F.3d at 605; *Heerde*, 741 F. Supp. 3d 849; *R.C. v. Walgreen*, 733 F. Supp. 3d at 902.

60. Each Tracking Company, by means of a machine, instrument, or contrivance, willfully read, attempted to read, and learned the contents of Plaintiff's communications while in transit, without the consent of all parties, in violation of the second clause of § 631(a).

61. Defendant willfully aided, agreed with, employed, and conspired with each Tracking Company to commit those acts, in violation of the fourth clause of § 631(a).

62. The conduct was willful, and Plaintiff did not consent; any disclosure was at most retroactive and legally insufficient.

63. Each acquisition of the contents of each of Plaintiff's search communications by each Tracking Company was a separate, discrete violation.

64. All violations occurred within one year of the filing of this Complaint and are timely. Cal. Civ. Proc. Code § 340(a).

65. Plaintiff submitted no fewer than ten distinct search queries through the Website's search bar during the limitations period. The search Plaintiff documented on August 12, 2025, described above, was acquired by no fewer than three documented third-party recipients — Meta, Google's DoubleClick endpoint, and Google's user-list endpoint — and each of Plaintiff's remaining queries was acquired by the same three recipients through the same automatic interception architecture, which operated uniformly and indiscriminately on every search. At least three discrete interceptions per query, across at least ten queries, yields no fewer than thirty separate, separately actionable violations.

66. Pursuant to Cal. Penal Code § 637.2(a)(1) and (c), Plaintiff is entitled to statutory damages of $5,000 per violation — not less than $150,000 in total — without proof of actual damages, together with injunctive relief under § 637.2(b).

## THIRD CAUSE OF ACTION
### Breach of Contract

67. Plaintiff realleges and incorporates the preceding paragraphs.

68. Plaintiff and Defendant entered into a contract governing Plaintiff's use of the Website, comprising Defendant's Terms of Use and Privacy Policy (collectively, the "Terms"), which includes the arbitration provision governing the parties' disputes.

69. The Terms obligated Defendant to handle the contents of Plaintiff's communications and personal information in accordance with Defendant's stated commitments, and not to cause the contents of Plaintiff's search communications to be disclosed to third parties for those third parties' own independent commercial exploitation.

70.    Defendant breached the Terms by intercepting and causing the verbatim contents of Plaintiff's search communications to be transmitted to Meta and Google for those companies' own commercial purposes, contrary to Defendant's contractual commitments.

71.    Plaintiff performed all conditions required of him under the Terms. On August 18, 2025, Plaintiff provided Defendant written notice of his claim at the address Defendant designated for that purpose, and Defendant failed to respond or cure within the period provided.

72.    As a direct and proximate result of Defendant's breach, Plaintiff suffered damages in an amount to be proven, including the lost value of his personal information and the loss of the benefit of his bargain.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.    Statutory damages of $5,000 for each of the thirty violations of Cal. Penal Code § 631(a), totaling $150,000, pursuant to Cal. Penal Code § 637.2;

B.    Statutory or actual damages, and punitive damages, pursuant to 18 U.S.C. § 2520;

C.    Contract damages according to proof;

D.    Injunctive relief pursuant to Cal. Penal Code § 637.2(b) and 18 U.S.C. § 2520(b)(1) prohibiting Defendant from intercepting, or aiding, procuring, or enabling others to intercept, the contents of visitors' communications without prior consent;

E.    Reasonable attorney's fees and costs to the extent recoverable, and costs of suit; and

F.    Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 13, 2026

Respectfully submitted,

13

/s/ Vivek Shah
Vivek Shah