ASHWINI ARUN, ESQ. (Cal. Bar No. 345112)
633 West Fifth Street, Office 2618E
Los Angeles, CA 90071
Telephone: (650) 314-9970
aaruniplaw@gmail.com

RAY ASHBURG (Admitted Pro Hac Vice)
SHABNAM HAJIAN (Admitted Pro Hac Vice)
ASHBURG PLLC d/b/a AVONTIS
112 S. Tryon Street, Suite 809
Charlotte, NC 28284
Telephone: (704) 408-2530
Ashburg@Avontislaw.com | Hajian@Avontislaw.com

Attorneys for Defendant and Counterclaimant
IMPRINT.COM, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| VIVEK SHAH,<br><br>Plaintiff,<br><br>v.<br><br>IMPRINT.COM LLC,<br><br>Defendant.<br><br>IMPRINT.COM, LLC,<br><br>Counter-Plaintiff,<br>v.<br><br>VIVEK SHAH; and JOHN DOES 1–10, inclusive,<br><br>Counter-Defendants. | **Case No. 2:26-cv-06526-MWC-PD(x)**<br><br>**DEFENDANT IMPRINT.COM, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT; AND COUNTERCLAIMS AGAINST PLAINTIFF VIVEK SHAH AND ADDITIONAL COUNTER-DEFENDANTS JOHN DOES 1–10 (FED. R. CIV. P. 13(h))**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Hon. Michelle Williams Court<br>Magistrate Judge: Hon. Patricia Donahue<br><br>Complaint Filed: June 13, 2026 |

Defendant and Counterclaimant Imprint.Com, LLC ("Imprint" or "Defendant"), by and through its undersigned counsel, hereby answers the Complaint of Plaintiff Vivek Shah ("Plaintiff" or "Shah") filed June 13, 2026 (ECF No. 1, the "Complaint"), and asserts its affirmative defenses and counterclaims as set forth below.

**PRELIMINARY STATEMENT AND PROCEDURAL HISTORY**

Before filing this action, Plaintiff himself initiated arbitration of these very claims. Plaintiff commenced AAA Consumer Arbitration Case No. 01-25-0005-7196, Vivek Shah v. Imprint.Com, LLC, before the Hon. Janice L. Sperow (Ret.) (the "Arbitration"), asserting the same claims, arising from the same alleged conduct, that he asserts in this Court, and Imprint asserted counterclaims against Plaintiff in the Arbitration. On June 13, 2026, while the Arbitration remained pending, Plaintiff filed the Complaint in this action, subjecting Imprint to duplicative, parallel proceedings in two forums simultaneously.

Plaintiff's duplicative filing is part of a broader litigation pattern that has now been judicially condemned. On July 20, 2026, the Honorable R. Gary Klausner of this District formally declared Plaintiff a vexatious litigant and entered a prefiling order barring Plaintiff from filing any new case in the Central District of California asserting claims arising under the California Invasion of Privacy Act

("CIPA") or other related digital privacy claims without first obtaining leave of court. *Shah v. Crain Communications, Inc.*, No. 2:26-cv-03070-RGK-CTS, ECF No. 34 (C.D. Cal. July 20, 2026). (the "Vexatious Litigant Order"), a true and correct copy of which is attached hereto as Exhibit J. The Court catalogued at least twenty-nine proceedings initiated by Plaintiff between 2021 and 2026 — nearly all resolved adversely to Plaintiff or voluntarily dismissed by him at the pleading stage — and made substantive findings that Plaintiff's record of seeking out CIPA violations, voluntarily dismissing his actions when met with a motion to dismiss, and failing to try any claim on the merits "strongly indicates that Plaintiff's purpose is to harass defendants into coercive settlements—rather than seek redress from the judiciary in good faith." *See* Ex. J at 9.

The federal court's findings confirm the record already developed in the Arbitration. According to the American Arbitration Association's own Provider Organization Disclosure Report dated March 17, 2026, Plaintiff has initiated 177 consumer arbitrations — 118 closed and 59 pending — against a roster of online businesses. *See* Ex. D. Plaintiff's own binding admissions in the Arbitration establish that his claim against Imprint was manufactured, not suffered: Plaintiff visited the Website for the admitted purpose of "testing" it; he opened his browser's developer tools and applied a network-panel filter for the term "VIVEK"; and he then typed his own first name into the Website's search bar —

while monitoring the Website's network activity with those developer tools — specifically so that he could capture and record the very transmission he anticipated, intending to use the result to "evaluate a potential violation" of CIPA. *See* Ex. C at 4. A litigant who deliberately generates, monitors, and preserves the transmission of a single search term — his own first name — with full knowledge of, and/or consent to, the very data flow he then labels an "interception" has no reasonable expectation of privacy in that term and suffers no cognizable privacy injury. Plaintiff conducts this operation on a mass-produced, assembly-line basis: templated third-party privacy demand notices disseminated through a commercial printing and mailing service (LetterStream) *See* Ex. C at 1; Ex. H, a remote coworking-suite address at 1301 N. Broadway, Ste. 32167, Los Angeles, California, held out as his address *See* Ex. I, and, the use of a substitute address to mask his actual location — the very location he simultaneously places at issue as the residency predicate of his CIPA claim while refusing all discovery into it.

Imprint sought precisely this relief in the Arbitration first. On April 23, 2026, Imprint moved to dismiss Plaintiff's Amended Demand on grounds including that Plaintiff is not a bona fide consumer but a claim-manufacturing enterprise engaged in the systematic abuse of arbitration and court processes, and Imprint requested referral of Plaintiff's 177-filing pattern to the AAA and to appropriate authorities. On May 13, 2026, the Arbitrator denied that motion in its

entirety without prejudice. The denial of that relief permitted Plaintiff's abuse of process to continue: one month later, while the Arbitration he himself had initiated remained pending, Plaintiff filed this duplicative federal action asserting the identical claims, in breach of the very arbitration agreement he had invoked.

At the hearing held on Monday, July 13, 2026, at the suggestion of Plaintiff (Claimant in the Arbitration) and with the agreement of Imprint (Respondent in the Arbitration), and in order to avoid duplicative litigation of the same dispute in two forums, the parties agreed to terminate the Arbitration, and the Arbitrator issued an order terminating the Arbitration without prejudice on July 17, 2026. Accordingly, and in reliance on that agreement, Imprint answers the Complaint on the merits and asserts in this Court, as compulsory counterclaims, the claims it previously asserted as counterclaims in the Arbitration.

Nothing in this pleading waives, and Imprint expressly reserves: (i) all rights, remedies, claims, offsets, and requests for fees, costs, and sanctions arising from or asserted in the Arbitration, including those occasioned by Plaintiff's duplicative June 13, 2026 filing; (ii) all substantive terms of the parties' Agreement, including its choice-of-law, contractual-limitations, notice-and-cure, indemnification, third-party-claims, and limitation-of-liability provisions, which survive the parties' agreement to terminate the arbitral forum; and all rights with respect to the arbitral proceedings.

## ANSWER

Imprint responds to the correspondingly numbered paragraphs of the Complaint as follows. Any allegation not expressly admitted below is denied. Headings and titles used in the Complaint are reproduced solely for convenience; they contain no allegations of fact, and no response is required to them. To the extent a response is deemed required, all headings and unnumbered text of the Complaint are denied.

1. Paragraph 1 states legal conclusions and Plaintiff's characterization of his own action, to which no response is required. To the extent a response is required, Imprint admits only that Plaintiff purports to assert claims under the federal Wiretap Act, the California Invasion of Privacy Act ("CIPA"), and California contract law, and denies that any such claims have merit, denies that any "real-time interception" or "aiding, agreeing with, employing, [or] procuring" of interception occurred, and denies each and every remaining allegation of Paragraph 1.

2. Imprint admits only that its website, https://imprint.com (the "Website"), like the overwhelming majority of commercial websites, has used industry-standard, publicly documented advertising and analytics services, the use of which is disclosed in the Privacy Policy incorporated into Imprint's Terms and Conditions of Use and Sale (the "Terms" or the "Agreement"). Imprint expressly denies that any such service "operates as a hidden, automated wiretap," denies

Plaintiff's remaining characterizations, and denies each and every remaining allegation of Paragraph 2.

3. Denied.

4. Imprint admits only that, by his own admissions in the Arbitration, Plaintiff accessed the Website on or about August 12, 2025 and entered a search term while simultaneously operating browser developer tools ("DevTools") to monitor and capture the Website's network traffic for the purpose of identifying the recipients of any transmissions. Imprint lacks knowledge or information sufficient to form a belief as to what Plaintiff purports to have "documented" in his own browser, and on that basis denies those allegations. Imprint denies that any unlawful interception of Plaintiff's communications occurred and denies each and every remaining allegation of Paragraph 4.

5. Denied. Plaintiff's access to and continued, deliberate use of the Website constituted acceptance of, and consent to, the Terms and the Privacy Policy incorporated therein, which clearly and conspicuously disclose Imprint's data collection and usage practices, including the use of cookies and third-party service providers. The judicial decision referenced in Paragraph 5 speaks for itself; Imprint denies Plaintiff's characterization of it and denies each and every remaining allegation of Paragraph 5.

6. Paragraph 6 states legal conclusions to which no response is required; the cited statutes speak for themselves. To the extent a response is required, Imprint denies that it violated Cal. Penal Code § 631(a) or 18 U.S.C. § 2511 in any respect, denies that any "Tracking Company" unlawfully "intercepted" the contents of Plaintiff's communications, denies that Imprint "aided, agreed with, employed, [or] procured" any such interception, and denies each and every remaining allegation of Paragraph 6.

7. Imprint admits only that Plaintiff purports to seek the relief described in Paragraph 7 and denies that Plaintiff is entitled to any relief whatsoever.

8. Paragraph 8 states a legal conclusion to which no response is required. To the extent a response is required, Imprint admits only that the Complaint purports to invoke this Court's jurisdiction under 28 U.S.C. § 1331, denies that Plaintiff's claims have merit, and avers that Plaintiff's claims were pending in the Arbitration that Plaintiff himself initiated from the commencement of that proceeding until the parties agreed, at the July 13, 2026 hearing, to terminate the Arbitration without prejudice.

9. Paragraph 9 states a legal conclusion to which no response is required. To the extent a response is required, Imprint denies that Plaintiff's state-law claims have any merit and denies each and every remaining allegation of Paragraph 9.

10. Paragraph 10 states legal conclusions to which no response is required. To the extent a response is required, Imprint lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's citizenship, and on that basis denies them; admits that Imprint is a citizen of Texas; denies that the amount in controversy on any meritorious claim exceeds $75,000 or any amount; and denies each and every remaining allegation of Paragraph 10.

11. Imprint lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 concerning Plaintiff's citizenship, domicile, and residence, and on that basis denies them. Imprint avers that Plaintiff has alleged that he is a resident of California and that the address Plaintiff uses in his filings, 1301 N. Broadway, Ste. 32167, Los Angeles, California, is a coworking address and not his residence.

12. Imprint admits that it is a limited liability company organized under the laws of the State of Texas and that, for purposes of diversity jurisdiction, it is a citizen of the State of Texas and of no other State. Paragraph 12's statements of law require no response. Except as expressly admitted, Imprint denies the allegations of Paragraph 12, including Plaintiff's purported identification, on "information and belief," of the identity and personal residential address of Imprint's membership.

13. Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, denied. Imprint specifically denies that Plaintiff's claims place any amount, let alone more than $75,000, legitimately in controversy.

14. Paragraph 14 states legal conclusions to which no response is required; the cited statute and cases speak for themselves. To the extent a response is required, Imprint denies that any violation of Cal. Penal Code § 631(a) occurred, denies that Plaintiff submitted "no fewer than ten distinct search queries" as alleged, denies that thirty (or any) "separately actionable violations" occurred, denies Plaintiff's damages arithmetic, and denies each and every remaining allegation of Paragraph 14.

15. Paragraph 15 states legal conclusions to which no response is required; 18 U.S.C. § 2520 speaks for itself. To the extent a response is required, Imprint denies that Plaintiff is entitled to actual, statutory, or punitive damages, attorney's fees, or any other relief.

16. Paragraph 16 states legal conclusions to which no response is required. To the extent a response is required, Imprint denies that Plaintiff is entitled to contract damages or injunctive relief, denies Plaintiff's speculation concerning the purported cost of any injunction, including the unsupported assertion that

compliance would "exceed $50,000," and denies each and every remaining allegation of Paragraph 16.

17. Denied.

18. Paragraph 18 states legal conclusions to which no response is required; the cited decision speaks for itself. To the extent a response is required, Imprint denies Plaintiff's characterization of the law, denies that it expressly aimed any wrongful conduct at California, denies that it engaged in any wrongful conduct at all, and denies each and every remaining allegation of Paragraph 18.

19. Imprint admits only that the Website is an interactive commercial website accessible to internet users generally, including users located in California. Imprint denies that it "deliberately embedded" any code for the purpose alleged, lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's "information and belief" allegations concerning geolocation and monetization, and on that basis denies them, and denies each and every remaining allegation of Paragraph 19.

20. Paragraph 20 states legal conclusions to which no response is required. To the extent a response is required, denied. Imprint lacks knowledge or information sufficient to form a belief as to Plaintiff's physical location at any relevant time, and on that basis denies those allegations. Imprint further avers that the parties' Agreement contains a Texas choice-of-law provision and a Harris

County, Texas venue provision (Terms § 36), and Imprint reserves all rights under 28 U.S.C. § 1404.

21. Imprint lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21, and on that basis denies them.

22. Imprint admits that it is a Texas limited liability company and that it owns and operates the Website and controls the Website's source code. Except as expressly admitted, Imprint denies the allegations of Paragraph 22, including Plaintiff's characterization of any "decision to embed, configure, and maintain" purported "third-party tracking code described herein," and Plaintiff's purported identification of Imprint's membership.

23. Paragraph 23 states legal conclusions and generalized agency allegations to which no response is required. To the extent a response is required, denied.

24. Imprint admits only that the Website includes a search function that permits visitors to search for products, and that submitted searches may return a results page whose URL reflects the search input. Imprint denies Plaintiff's legal characterization of a product-search entry on a public e-commerce website as a private "communication," and denies each and every remaining allegation of Paragraph 24.

25. Imprint lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25, including the number of searches Plaintiff claims to have submitted and Plaintiff's physical location at any time, and on that basis denies them. Imprint specifically denies that Plaintiff's alleged searches were bona fide consumer activity; by his own admissions, Plaintiff accessed the Website while operating DevTools for the purpose of monitoring network traffic and manufacturing a claim.

26. Imprint admits only that Plaintiff has asserted, here and in the Arbitration, that on or about August 12, 2025 he submitted the search term "VIVEK" through the Website's search bar while contemporaneously operating DevTools to inspect network activity. Imprint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26, and on that basis denies them. Imprint specifically denies that a search for Plaintiff's own first name, entered while Plaintiff monitored network traffic in order to identify transmission recipients, "disclosed information about Plaintiff's interests and activity that Plaintiff reasonably regarded as private."

27. Denied. Plaintiff had no reasonable expectation of privacy in a search term — his own first name — that he typed into a public e-commerce website's product-search bar for the admitted purpose of testing whether, and to whom, it

would be transmitted, after which he continued to use the Website with knowledge of the disclosed data practices.

28. Denied as stated. Imprint denies that its data practices were "unknown to Plaintiff" as a matter of any legally cognizable expectation: the Terms and the incorporated Privacy Policy clearly and conspicuously disclose Imprint's data collection and usage practices, including the use of cookies and third-party service providers, and Plaintiff's continued, deliberate use of the Website constituted acceptance of and consent to those disclosures. Except as so stated, Imprint denies each and every allegation of Paragraph 28.

29. Imprint lacks knowledge or information sufficient to form a belief as to what Plaintiff purports to have observed, captured, or recorded in his own browser and DevTools session, including the request parameters, identifiers, timestamps, and server responses recited in Paragraph 29, and on that basis denies those allegations. Imprint denies that any "interception" within the meaning of any statute occurred, and denies each and every remaining allegation and characterization of Paragraph 29.

30. Imprint responds to Paragraph 30 in the same manner as Paragraph 29: Imprint lacks knowledge or information sufficient to form a belief as to what Plaintiff purports to have observed, captured, or recorded in his own browser and DevTools session, and on that basis denies those allegations; denies that any

unlawful "interception" occurred; and denies each and every remaining allegation and characterization of Paragraph 30.

31. Imprint responds to Paragraph 31 in the same manner as Paragraphs 29 and 30, and on that basis denies the allegations of Paragraph 31, denies that any unlawful "interception" occurred, and denies each and every remaining allegation and characterization of Paragraph 31.

32. Imprint lacks knowledge or information sufficient to form a belief as to what Plaintiff purports to have "documented" or "filtered" in his own DevTools inspections, and on that basis denies those allegations. Imprint specifically denies that "thirty violations" — or any violations — occurred, and denies each and every remaining allegation of Paragraph 32. Imprint avers that Paragraph 32 confirms Plaintiff's own admission that he intentionally and knowingly monitored, captured, and analyzed the Website's network transmissions to and from third parties.

33. Denied.

34. Denied. The cited authority speaks for itself, and Imprint denies Plaintiff's characterization of it. Imprint further lacks knowledge or information sufficient to form a belief as to the timestamps and observations Plaintiff attributes to his own DevTools session, and on that basis denies them.

35. Paragraph 35 states legal conclusions and characterizations of case law to which no response is required; the cited decision speaks for itself. To the extent a response is required, denied.

36. Paragraph 36 states legal conclusions to which no response is required; the cited statutes and decision speak for themselves. To the extent a response is required, Imprint denies Plaintiff's characterizations and denies each and every remaining allegation of Paragraph 36.

37. Denied. Plaintiff's knowing, continued, and deliberate access to and use of the Website constituted acceptance of, and consent to, the Terms, including the incorporated Privacy Policy and its clear and conspicuous disclosure of Imprint's data collection and usage practices, including the use of third-party service providers and integrated technologies.

38. Denied. Imprint denies that its disclosures were "at most retroactive" or "legally insufficient," and denies Plaintiff's characterizations of the cited decisions, which speak for themselves. Imprint admits only that Plaintiff has admitted that he navigated to the Website's Terms, identified the arbitration provision, and thereafter initiated the Arbitration — conduct confirming Plaintiff's actual review of, and assent to, the Agreement he now seeks to disavow. Except as expressly admitted, each and every remaining allegation of Paragraph 38 is denied.

39. Denied. Imprint further lacks knowledge or information sufficient to form a belief as to the internal purposes, practices, and systems of Meta Platforms, Inc. or Google LLC, and on that basis denies the allegations concerning those non-parties.

40. Imprint lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40 concerning the internal data practices, profile-matching, and systems of Meta and Google, and on that basis denies them. Imprint denies each and every remaining allegation of Paragraph 40.

41. Paragraph 41 states legal conclusions to which no response is required. To the extent a response is required, denied.

42. Denied as stated. Imprint denies that "the interceptions occurred because Defendant made them occur," denies that any unlawful interception occurred at all, and denies Plaintiff's characterizations of Imprint's configuration and maintenance of its own Website. Imprint lacks knowledge or information sufficient to form a belief as to the specific account identifiers Plaintiff recites, which Plaintiff purports to have extracted from his own DevTools monitoring, and on that basis denies them. Each and every remaining allegation of Paragraph 42 is denied.

43. Denied as stated. Imprint denies Plaintiff's characterizations of Imprint's knowledge, intent, and profits, and denies each and every remaining

allegation of Paragraph 43. The referenced third-party documentation and agreements, to the extent they exist, speak for themselves.

44. Denied.

45. Paragraph 45 states legal conclusions to which no response is required. To the extent a response is required, denied. Plaintiff — a serial privacy violation claim manufacturer enterprise who admittedly accessed the Website for the purpose of engineering this claim without any expectation of privacy, who purchased nothing, and who searched for nothing but his own first name “Vivek” while intentionally and knowingly monitoring the network traffic — has suffered no injury in fact.

46. Denied.

47. Denied.

48. Denied.

49. Imprint incorporates by reference its responses to Paragraphs 1 through 48 as though fully set forth herein.

50. Paragraph 50 states a legal conclusion to which no response is required. To the extent a response is required, denied.

51. Paragraph 51 states legal conclusions to which no response is required; the cited statute and decisions speak for themselves. To the extent a response is required, denied.

52. Denied.

53. Denied.

54. Denied. Imprint specifically denies that the party exception of 18 U.S.C. § 2511(2)(d) is unavailable and denies that any communication was intercepted for the purpose of committing any criminal or tortious act.

55. Denied. Plaintiff consented through his acceptance of the Terms and the incorporated Privacy Policy and through his knowing, continued use of the Website.

56. Paragraph 56 states legal conclusions to which no response is required; 18 U.S.C. § 2520 speaks for itself. To the extent a response is required, Imprint denies that Plaintiff is entitled to any of the relief described.

57. Imprint incorporates by reference its responses to Paragraphs 1 through 56 as though fully set forth herein.

58. Paragraph 58 states legal conclusions to which no response is required. To the extent a response is required, denied.

59. Paragraph 59 states legal conclusions to which no response is required; the cited authorities speak for themselves. To the extent a response is required, denied.

60. Denied.

61. Denied.

62. Denied. Plaintiff consented; the conduct alleged was neither willful nor unlawful; and Imprint's disclosures were clear, conspicuous, and effective.

63. Paragraph 63 states a legal conclusion to which no response is required. To the extent a response is required, denied.

64. Denied. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 of the Complaint and, therefore, denies the same.

65. Denied. Imprint specifically denies that Plaintiff submitted "no fewer than ten distinct search queries" as alleged, denies that any "interception" occurred, and denies that thirty — or any — "separate, separately actionable violations" occurred.

66. Paragraph 66 states legal conclusions to which no response is required. To the extent a response is required, Imprint denies that Plaintiff is entitled to statutory damages of $5,000 per violation, $150,000 in total, injunctive relief, or any relief whatsoever.

67. Imprint incorporates by reference its responses to Paragraphs 1 through 66 as though fully set forth herein.

68. Imprint admits that Plaintiff's access to and use of the Website are governed by Imprint's Terms and Conditions of Use and Sale, which incorporate the Privacy Policy by reference and which include, among other provisions, a

mandatory binding arbitration provision, a Texas choice-of-law and Harris County, Texas exclusive-venue provision, indemnification obligations running from Plaintiff to Imprint, and a provision requiring that complaints, claims, concerns, or questions regarding third-party products, services, or technologies be directed to the applicable third party. Except as expressly admitted, Imprint denies the allegations of Paragraph 68, including Plaintiff's selective and self-serving characterization of the Agreement, which speaks for itself in its entirety.

69. Denied. The Terms speak for themselves, and Imprint denies Plaintiff's characterization of the obligations they impose. Imprint specifically denies that the Terms prohibit the disclosed use of third-party service providers and integrated technologies, and avers that the Terms expressly direct that claims concerning third-party products, services, or technologies be directed to the applicable third party. (Terms § 24.)

70. Denied.

71. Denied as stated. Imprint admits only that on or about August 18, 2025, Plaintiff caused to be delivered to Imprint a form demand notice, substantively identical to form notices Plaintiff has disseminated to numerous other businesses, asserting a purported CIPA violation and demanding monetary relief. Imprint denies that Plaintiff performed all conditions required of him under the Terms — to the contrary, Plaintiff has materially breached the Terms, including their

indemnification, third-party-claims, arbitration, and venue provisions — and denies each and every remaining allegation of Paragraph 71.

72. Denied.

**RESPONSE TO PRAYER FOR RELIEF**

The unnumbered "Prayer for Relief" paragraphs of the Complaint, including subparts A through F, state requests for relief to which no response is required. To the extent a response is required, Imprint denies that Plaintiff is entitled to the relief requested in the Prayer for Relief or to any relief whatsoever, and requests that judgment be entered in Imprint's favor and against Plaintiff on all claims.

**RESPONSE TO DEMAND FOR JURY TRIAL**

The Complaint's Demand for Jury Trial states no allegations of fact and requires no response. To the extent a response is required, Imprint denies that Plaintiff is entitled to any relief on any issue, whether tried to a jury or to the Court.

**GENERAL DENIAL**

Except as expressly admitted or otherwise answered above, Imprint denies each and every allegation of the Complaint, including without limitation all allegations contained in headings, footnotes, and unnumbered paragraphs, and denies that Plaintiff has been damaged in any amount or is entitled to any relief.

## AFFIRMATIVE DEFENSES

Without assuming any burden of pleading or proof that it would not otherwise bear, Imprint asserts the following separate and additional defenses to the Complaint. Imprint reserves the right to amend or supplement these defenses as discovery proceeds.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint, and each purported cause of action therein, fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Consent)

Plaintiff's claims are barred because Plaintiff consented, expressly and impliedly, to the conduct alleged. Plaintiff's knowing, continued, and deliberate access to and use of the Website constituted acceptance of the Terms and the incorporated Privacy Policy, which clearly and conspicuously disclose Imprint's data collection and usage practices, including the use of cookies, third-party service providers, and integrated technologies. Plaintiff's admitted review of the Terms, and his invocation of them to initiate the Arbitration, confirm his assent.

### THIRD AFFIRMATIVE DEFENSE

**(Party Exception; 18 U.S.C. § 2511(2)(d); Cal. Penal Code § 631(a))**

Plaintiff's statutory claims are barred because Imprint was a party to any communication between Plaintiff and the Website, because any communication was made with the consent of a party, and because no communication was acquired for the purpose of committing any criminal or tortious act.

**FOURTH AFFIRMATIVE DEFENSE**

**(No Reasonable Expectation of Privacy; No "Contents"; No "Interception" In Transit)**

Plaintiff's claims are barred because Plaintiff had no reasonable expectation of privacy in a product-search entry — his own first name — typed into a public e-commerce website for the admitted purpose of testing the Website's network transmissions; because the routine operation of disclosed website analytics and advertising services does not constitute the reading or acquisition of the "contents" of a "communication" "while in transit" within the meaning of Cal. Penal Code § 631(a) or 18 U.S.C. § 2511; and because no "device" was used within the meaning of the federal Wiretap Act.

**FIFTH AFFIRMATIVE DEFENSE**

**(Choice of Law — Texas Law Governs)**

Plaintiff's California statutory and common-law claims are barred because the parties' Agreement contains a valid and enforceable provision selecting Texas substantive law to govern the parties' disputes (Terms § 36), and California's Invasion of Privacy Act therefore does not supply Plaintiff a cause of action against Imprint. The Agreement's choice-of-law provision survives the parties' agreement to terminate the arbitral forum.

**SIXTH AFFIRMATIVE DEFENSE**

**(Contractual Limitations Pre-Dispute Procedures)**

Plaintiff's claims are barred in whole or in part by the mandatory pre-dispute notice-and-cure procedures set forth in the Agreement (Terms § 22), which survives the parties' agreement to terminate the arbitral forum.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Indemnification; Assumption of Responsibility)**

Plaintiff's claims are barred, or any recovery must be reduced or offset, because Plaintiff agreed to indemnify, defend, and hold harmless Imprint from any and all claims, actions, losses, liabilities, damages, expenses, demands, and costs of any kind, including reasonable attorneys' fees, arising out of, resulting from, or in any way connected with or related to Plaintiff's use of, or connection with, the Website. (Terms § 23.)

**EIGHTH AFFIRMATIVE DEFENSE**

**(Third-Party Claims Provision)**

Plaintiff's claims are barred because Plaintiff expressly agreed that complaints, claims, concerns, or questions regarding third-party products, services, or technologies must be directed to the applicable third party, not to Imprint. (Terms § 24.) To the extent Plaintiff complains of the alleged conduct of Meta Platforms, Inc., Google LLC, or any other third party, his agreed recourse, if any, is against those third parties.

**NINTH AFFIRMATIVE DEFENSE**

**(Limitation of Liability)**

Plaintiff's claims and alleged damages are barred or limited by the disclaimer-of-warranties and limitation-of-liability provisions of the Agreement, including the exclusion of indirect, special, incidental, exemplary, consequential, and punitive damages and the cap on Imprint's total liability. (Terms §§ 20–21.)

**TENTH AFFIRMATIVE DEFENSE**

**(Lack of Standing; No Injury in Fact; No Consumer Standing)**

Plaintiff's claims are barred because Plaintiff lacks standing, including Article III standing, having suffered no concrete, particularized injury in fact. Plaintiff purchased nothing, attempted to purchase nothing, engaged in no bona fide consumer transaction, searched for nothing but his own first name with no

expectation of privacy, and knowingly accessed the Website for the admitted purpose of monitoring its network traffic and manufacturing a statutory claim. A self-inflicted, manufactured, or engineered injury is not an injury in fact, and Plaintiff lacks standing as a consumer as he is a serial privacy claim manufacturer.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands; In Pari Delicto)**

Plaintiff’s claims, and in particular his requests for equitable relief, are barred by the doctrines of unclean hands and in pari delicto. By his own admissions, Plaintiff intentionally intercepted, monitored, captured, and analyzed communications between the Website and third parties, including Google, DoubleClick, and Facebook, while located in California — the very conduct of which he accuses Imprint — and did so as part of a systematic, industrial-scale practice of engineering statutory privacy claims.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Waiver; Estoppel; Ratification)**

Plaintiff’s claims are barred in whole or in part by the doctrines of waiver, estoppel, and ratification, including because Plaintiff invoked and initiated arbitration under the very Agreement whose consent and disclosure provisions he now seeks to escape, and because Plaintiff continued to use the Website after full knowledge of the practices of which he complains.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(No Willfulness; No Intent; Good Faith)**

Plaintiff's statutory claims are barred because Imprint did not act willfully or intentionally within the meaning of Cal. Penal Code § 631(a) or 18 U.S.C. § 2511, and because Imprint at all times acted in good faith and in conformity with industry-standard practices disclosed to Website users.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate; Set-Off)**

Plaintiff's alleged damages, if any, are barred or must be reduced by Plaintiff's failure to mitigate and by set-off and recoupment in the amounts owed by Plaintiff to Imprint, including under the indemnification provisions of the Agreement and on Imprint's counterclaims.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Personal Jurisdiction — Preserved)**

To the extent Plaintiff cannot establish that he was, in fact, a California resident present in California at the times alleged, this Court lacks personal jurisdiction over Imprint, and Imprint preserves that defense. Plaintiff's residence, presence, and California nexus were the subject of dispute and discovery in the Arbitration and remain in dispute.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Venue — Preserved)**

Imprint preserves all rights under 28 U.S.C. §§ 1404 and 1406, including in light of the Harris County, Texas venue provision of the parties' Agreement. (Terms § 36.)

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Reservation of Rights Regarding the Arbitration)**

At the July 13, 2026 hearing in the Arbitration, at Plaintiff's suggestion and with Imprint's agreement, and in order to avoid duplicative litigation in two forums, the parties agreed to terminate the Arbitration, and the Arbitrator issued an order terminating the Arbitration without prejudice on July 17, 2026. Imprint reserves all rights, remedies, claims, defenses, offsets, and requests for fees, costs, and sanctions arising from or asserted in the Arbitration, including those occasioned by Plaintiff's duplicative June 13, 2026 filing, and, all rights with respect to the arbitral proceedings and the parties' dispute-resolution agreement.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Reservation)**

Imprint reserves the right to assert additional defenses, including defenses that become known through discovery, and does not knowingly or intentionally waive any applicable defense.

## COUNTERCLAIMS

For its counterclaims against Plaintiff and Counter-Defendant Vivek Shah ("Shah"), and against additional Counter-Defendants John Does 1–10 (together with Shah, the "Counter-Defendants"), who are joined as parties to these counterclaims pursuant to Federal Rules of Civil Procedure 13(h), 19, and 20, Defendant and Counterclaimant Imprint.Com, LLC ("Imprint") alleges as follows. These counterclaims are compulsory under Federal Rule of Civil Procedure 13(a). Imprint previously asserted claims against Shah as counterclaims in the Arbitration; following the parties' July 13, 2026 agreement to terminate the Arbitration without prejudice, Imprint asserts them in this Court.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1331, because Count II arises under the laws of the United States, namely the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520; pursuant to 28 U.S.C. § 1367(a), because Counts I, III, and IV form part of the same case or controversy as the claims asserted in Plaintiff's Complaint; and pursuant to Federal Rule of Civil Procedure 13(a), because each Counterclaim arises out of the same transaction or occurrence that is the subject matter of Plaintiff's claims. This statement of jurisdiction is made pursuant to Local Rule 8-1.

2. Venue for these compulsory Counterclaims lies in this District because Shah commenced this action in this District. Imprint reserves all rights under 28 U.S.C. §§ 1404 and 1406 and under Section 36 of the parties' Agreement.

## THE PARTIES

3. Counterclaimant Imprint.Com, LLC is a Texas limited liability company that operates an online platform specializing in custom promotional products, accessible at https://imprint.com (the "Website").

4. Counter-Defendant Vivek Shah is a natural person who alleges that he is a resident of California, domiciled in Los Angeles County, and who conducts his filing and demand activity from a coworking address at 1301 N. Broadway, Ste. 32167, Los Angeles, California 90012.

5. Counter-Defendants John Does 1–10 are individuals or entities, presently unknown to Imprint, who, on information and belief, aided, abetted, agreed with, employed, conspired with, and/or worked in concert with Shah in the conduct alleged herein, including the interception, monitoring, capture, and analysis of the Website's network communications and the systematic identification of targets, preparation, and dissemination of form demand notices, engineered claims and/or litigation support. The true names and capacities of the Doe Counter-Defendants are unknown to Imprint, which will amend these Counterclaims to allege their true names and capacities when ascertained. On information and belief, each Counter-

Defendant was at all relevant times the agent, employee, co-conspirator, joint venturer, alter ego, or representative of each other Counter-Defendant, acted within the course and scope of that relationship, and authorized, directed, ratified, and/or knowingly benefited from the conduct of the others.

## FACTUAL ALLEGATIONS

6. Access to and use of the Website are governed by comprehensive Terms and Conditions of Use and Sale (the "Agreement" or "Terms"), which expressly condition use of the Website on the user's acceptance of all terms, including a mandatory binding arbitration provision and pre-dispute notice-and-cure procedures. A true and correct copy of the Terms is attached hereto as Exhibit A.

7. The Agreement incorporates by reference a detailed Privacy Policy that discloses Imprint's data collection and usage practices, including the use of cookies and third-party service providers. *See* Ex. A § 2; Ex. B. The Privacy Policy is not a separate or optional document, but an integral and binding component of the parties' contractual relationship. A true and correct copy of the Privacy Policy is attached hereto as Exhibit B.

8. The Agreement contains a valid and enforceable choice-of-law provision designating Texas law as governing, with exclusive venue in Harris County, Texas *See* Ex. A § 36; a mandatory binding arbitration provision and class-action waiver *See* Ex. A § 22; an indemnification provision obligating the user to indemnify,

defend, and hold harmless Imprint from any and all claims, actions, losses, liabilities, damages, expenses, demands, and costs of any kind, including reasonable attorneys' fees, arising out of or in any way connected with the user's use of the Website *See* Ex. A § 23; and a provision requiring that complaints, claims, concerns, or questions regarding third-party products, services, or technologies be directed to the applicable third party, not to Imprint *See* Ex. A § 24.

9. Shah, who alleges that he is a resident of California, accessed the Website on or about August 12, 2025, while, by his own account, located in California. *See* Compl., ECF No. 1 ¶ 11. During that visit, Shah entered the term "VIVEK" — his own first name — into the Website's search bar while simultaneously operating browser developer tools ("DevTools") to monitor and capture the Website's network traffic. *See* Compl., ECF No. 1 ¶¶ 4, 26, 29–32 ; Ex. C at 4.

10. Shah expressly acknowledges that he ran DevTools contemporaneously with his browsing session for the purpose of determining whether his search inputs were transmitted to third parties and, if so, identifying the recipients of such transmissions. *See* Ex. C at 4. Shah further admits that, immediately upon initiating the search, he observed that the search terms were transmitted to multiple third-party entities, including, but not limited to, Google, DoubleClick, and Facebook, and he has included screenshots purporting to reflect these observations in his

arbitration demands and in the Complaint in this action. *See* Compl., ECF No. 1 ¶¶ 4, 26, 29–32; Ex. C at 4.

11. By this admitted conduct, Shah intentionally and willfully intercepted, monitored, read, and learned the contents of electronic communications and network transmissions between Imprint's Website and third parties, including Google, DoubleClick, and Facebook, while those transmissions were in transit and while Shah was, by his own account, located in California — without the consent of Imprint or of those third parties.

12. Shah's continued and deliberate use of the Website constituted acceptance of the Agreement, including the Privacy Policy incorporated therein by reference. The Agreement and Privacy Policy clearly and conspicuously disclose Imprint's data collection and usage practices, including the use of third-party service providers and integrated technologies. *See* Ex. A §§ 2, 24; Ex. B. By knowingly continuing to access and use the Texas-operated Website after receiving notice of these disclosures, Shah manifested informed acceptance of, and assent to, the Agreement, including its provisions governing third-party data collection and usage practices.

13. Shah did not place any order, attempt to purchase any products or services, or otherwise engage in any bona fide consumer transaction on the Website. Rather, Shah's admitted purpose was to engineer a privacy claim. While

on the Website, Shah navigated to the Terms, identified the arbitration provision, and thereafter initiated arbitration proceedings against Imprint. *See* Compl., ECF No. 1 ¶ 38; Ex. C at 5. Shah knew or reasonably should have known that he lacks standing as a consumer to avoid the Texas choice of law, as he did not purchase, attempt to purchase, or otherwise obtain any goods or services from Imprint.

14. On or about August 18, 2025, Shah caused a form demand notice to be delivered to Imprint asserting a purported violation of Cal. Penal Code § 631(a) and demanding injunctive relief, declaratory relief, and monetary damages. That notice is substantively identical to form notices Shah has disseminated to numerous other businesses. A true and correct copy of that notice is attached hereto as Exhibit C.

15. Shah thereafter commenced AAA Consumer Arbitration Case No. 01-25-0005-7196 against Imprint, asserting claims under CIPA, the federal Wiretap Act, and for breach of contract — the same claims asserted in the Complaint here. On March 23, 2026, Shah filed an Amended Demand for Arbitration. On March 27, 2026, Imprint filed its Amended Counterclaims in the Arbitration, asserting claims against Shah for violations of CIPA and the ECPA, breach of contract, and frivolous or bad-faith litigation. The Arbitration proceeded before the Hon. Janice L. Sperow (Ret.).

16. On June 13, 2026, while the Arbitration remained pending, and without dismissing or seeking leave to withdraw his arbitration demand, Shah filed the Complaint in this action, asserting the same claims against the same party arising out of the same alleged conduct, thereby subjecting Imprint to duplicative, parallel proceedings in two forums simultaneously.

17. At the hearing held in the Arbitration on Monday, July 13, 2026, at Shah's suggestion and with Imprint's agreement, and in order to avoid duplicative litigation of the same dispute in two forums, the parties agreed to terminate the Arbitration, and the Arbitrator issued an order terminating the Arbitration without prejudice on July 17, 2026. From June 13, 2026 until that agreement, Imprint was compelled to defend against, and prosecute its counterclaims in, parallel proceedings in two forums by reason of Shah's duplicative filing.

18. Publicly available information demonstrates that Shah is a vexatious, serial privacy litigant with a pattern of filing substantially similar, engineered claims against numerous companies. According to the American Arbitration Association's Provider Organization Disclosure Report dated March 17, 2026, Shah has initiated 177 arbitration proceedings — 118 of which have been closed and 59 of which remain pending. A true and correct copy of the relevant report excerpt is attached hereto as Exhibit D. This extraordinary volume of filings reflects a systematic, industrial-scale pattern of litigation wholly inconsistent with

the conduct of a bona fide consumer, and instead evidences a professional litigant knowingly engaged in the serial manufacture of claims without any expectation of privacy. Shah's pattern has since been judicially confirmed: on July 20, 2026, the Honorable R. Gary Klausner declared Shah a vexatious litigant and entered a prefiling order requiring Shah to obtain leave of court before filing any new case in this District asserting claims arising under CIPA or other related digital privacy claims. *Shah v. Crain Communications, Inc.*, No. 2:26-cv-03070-RGK-CTS, ECF No. 34 (C.D. Cal. July 20, 2026). A true and correct copy of that order is attached hereto as Exhibit J. Imprint sought analogous relief from the Arbitrator by its April 23, 2026 motion to dismiss, which the Arbitrator denied in its entirety on May 13, 2026, declining to reach Shah's serial arbitration filings and related conduct as beyond the scope of the permitted motion.

19. In 2013, Shah pleaded guilty to nine federal criminal charges and was sentenced to 87 months' imprisonment for orchestrating a $122 million extortion scheme, in which he threatened to kill family members of seven prominent victims unless they wired tens of millions of dollars to offshore accounts, and in which he employed sophisticated methods to evade detection, including false identities, fraudulent financial accounts opened in victims' names, prepaid debit cards registered under aliases, anonymous public internet access points, manipulation of network identifiers, and the routing of communications through anonymizing

servers. *See* U.S. Attorney's Office, S.D. W. Va., Press Release dated September 11, 2013, attached hereto as Exhibit E; Criminal Complaint, *United States v. Shah*, No. 2:12-mj-00088 (S.D. W. Va.), attached hereto as Exhibit F; Plea Agreement, *United States v. Shah*, Nos. 5:12-cr-00172 & 5:13-cr-00127 (S.D. W. Va.), attached hereto as Exhibit G. This history directly undermines the credibility and bona fides of Shah's claims in this action.

20. As reported in an article published March 1, 2026 by Captain Compliance, titled "Alert for Privacy Counsels Vivek Shah and the Rising Tide of CIPA Private Right of Action Lawsuits," Shah has become closely associated with the proliferation of private-right-of-action claims under CIPA. The article documents Shah's history as an experienced and active litigant, including prior copyright and DMCA-related litigation against media outlets, and characterizes his CIPA enforcement activity as a systematic and sophisticated effort to target businesses, typically demanding $5,000 in statutory damages per alleged violation, along with attorneys' fees, arbitration costs, and injunctive relief. A true and correct copy of the article is attached hereto as Exhibit H. The notice reproduced in that article is substantively identical to the notice Shah sent to Imprint.

21. Shah utilizes a coworking address — 1301 N. Broadway, Ste. 32167, Los Angeles, California. *See* Exhibit I. Shah also maintains a business account with LetterStream to disseminate demand notices in a streamlined, systematic

manner. *See* Ex. C at 1. This conduct evidences that Shah operates in a commercial capacity, whether as a sole proprietor or through affiliated entities, including purported AI-related ventures such as Gauge AI, rather than as a bona fide consumer.

22. On information and belief, Shah does not act alone. On information and belief, one or more of the Doe Counter-Defendants including Gauge AI aid, abet, agree with, employ, conspire with, and work in concert with Shah in operating his claim-generation enterprise, including by: identifying and researching target websites; accessing target websites and operating DevTools or similar network-monitoring tools to capture, record, and analyze outbound network transmissions between those websites and third-party services; preparing, formatting, and disseminating form demand notices, including through Shah's LetterStream account; preparing arbitration demands and court filings; and administering, financing, and/or sharing in the proceeds of the enterprise. On information and belief, the interceptions of the Website's communications alleged herein were undertaken by Shah with the knowledge, agreement, substantial assistance, encouragement, and participation of Doe Counter-Defendants including Gauge AI, in furtherance of their common design.

23. As a direct and proximate result of the conduct of Shah and, on information and belief, the Doe Counter-Defendants including Gauge AI acting in

concert with him — including the interception of the Website's communications, Shah's breaches of the Agreement, and the initiation and maintenance of duplicative proceedings — Imprint has incurred and continues to incur damages, including attorneys' fees and costs expended in responding to the Counter-Defendants' engineered claims in two forums simultaneously.

**FIRST COUNTERCLAIM**

**(Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a); Remedies Under Cal. Penal Code § 637.2 — Against All Counter-Defendants)**

24. Imprint realleges and incorporates by reference each of the foregoing paragraphs of these Counterclaims as though fully set forth herein. This Counterclaim is pleaded in the alternative to, and to the extent consistent with, the substantive law that this Court determines governs the parties' disputes.

25. The network transmissions between Imprint's Website and third-party services, including Google, DoubleClick, and Facebook, were communications sent by wire, line, or cable, or were being sent from or received at a place within the State of California, within the meaning of Cal. Penal Code § 631(a).

26. By means of a machine, instrument, or contrivance — namely his computer, browser, and DevTools network-monitoring functionality — Shah willfully, and without the consent of all parties to the communications, read, attempted to read, and learned the contents and meaning of those communications

while the same were in transit or passing over a wire, line, or cable, or were being sent from or received within the State of California, in violation of the second clause of Cal. Penal Code § 631(a). Shah's conduct was intentional and admitted: he has expressly acknowledged that he operated DevTools contemporaneously with his browsing session for the very purpose of capturing and identifying the recipients of the Website's outbound transmissions, and he memorialized his interceptions in screenshots that he has filed in the Arbitration and in this action.

27. Shah's conduct was willful and without the consent of Imprint or of the third parties whose communications he intercepted, monitored, and recorded.

28. On information and belief, Doe Counter-Defendants including Gauge AI willfully aided, agreed with, employed, and conspired with Shah to unlawfully do, and to permit and cause to be done, the acts described above, in violation of the fourth clause of Cal. Penal Code § 631(a), including by providing the knowledge, agreement, substantial assistance, encouragement, resources, and infrastructure through which the interceptions were undertaken and exploited.

29. Pursuant to Cal. Penal Code § 637.2, Imprint is entitled to statutory damages of $5,000 per violation against each Counter-Defendant, jointly and severally, without proof of actual damages, together with injunctive relief prohibiting the Counter-Defendants from accessing or visiting the Website on a permanent basis, and such other relief as the Court deems just and proper.

**SECOND COUNTERCLAIM**

**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a); Civil Action Under 18 U.S.C. § 2520 — Against All Counter-Defendants)**

30. Imprint realleges and incorporates by reference each of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

31. The network transmissions between Imprint's Website and third-party services, including Google, DoubleClick, and Facebook, were electronic communications within the meaning of 18 U.S.C. § 2510(12).

32. Shah intentionally intercepted, endeavored to intercept, and used the contents of those electronic communications, by means of an electronic, mechanical, or other device — his computer, browser, and DevTools network-monitoring functionality — while the communications were in transit, without the consent of Imprint or of the third-party recipients, in violation of 18 U.S.C. § 2511(1)(a). Shah has admitted this conduct, has admitted his purpose in undertaking it, and has published the fruits of his interceptions in his arbitration demands and in the Complaint.

33. On information and belief, the Doe Counter-Defendants including Gauge AI intentionally procured Shah to intercept, and intentionally endeavored to intercept and used the contents of, the electronic communications described above,

in violation of 18 U.S.C. § 2511(1), by knowingly agreeing to, directing, substantially assisting, and participating in the interception scheme and by using its fruits in furtherance of the Counter-Defendants' common enterprise.

34. The Counter-Defendants' interceptions were undertaken for commercial gain and in furtherance of a systematic scheme to manufacture statutory privacy claims for the purpose of extracting coerced settlements from businesses. Such conduct is not protected by any exception under 18 U.S.C. § 2511(2). The alleged scheme is consistent with Shah's prior conduct involving extortion-related offenses, for which Shah previously served a term of imprisonment.

35. Pursuant to 18 U.S.C. § 2520, Imprint is entitled, as against each Counter-Defendant, to such preliminary, equitable, and declaratory relief as may be appropriate, damages as the Court deems just and appropriate, and reasonable attorneys' fees and other litigation costs reasonably incurred.

**THIRD COUNTERCLAIM**

**(Breach of Contract — Against Counter-Defendant Shah)**

36. Imprint realleges and incorporates by reference each of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

37. The Agreement, including the Privacy Policy incorporated therein, is a valid and enforceable contract between Imprint and Shah. Shah accepted the Agreement through his knowing, continued, and deliberate use of the Website, and

he has judicially admitted the existence and applicability of the Agreement, including its arbitration provision. *See* Compl., ECF No. 1 ¶ 68. Imprint has performed all obligations required of it under the Agreement, except those excused by Shah's conduct.

38. Shah has materially breached the Agreement in at least the following respects. First, Shah agreed to indemnify, defend, and hold harmless Imprint from any claims, actions, or liabilities arising out of or relating to his use of, or activities in connection with, the Website. *See* Ex. A § 23. Notwithstanding that clear and unequivocal obligation, Shah has failed to honor his indemnification duties and has instead initiated proceedings against Imprint based on purported claims that are unsupported and contrived for the purpose of extracting monetary relief. The indemnification provision is broad and unambiguous, and it assigns to Shah full responsibility for claims arising from his own conduct, including claims stemming from his own deliberate actions. Under the Agreement, any liability arising from Shah's use of the Website rests solely with Shah, not Imprint.

39. Second, Shah expressly agreed that any complaints, claims, concerns, or inquiries relating to third-party products, services, or technologies must be directed exclusively to the applicable third party, not to Imprint. *See* Ex. A § 24. To the extent Shah alleges that third parties received information relating to his Website activity, Shah expressly consented to such data collection and acknowledged that

Imprint bears no responsibility for the operations, practices, or technologies of third parties. Shah cannot circumvent these clear contractual limitations by repackaging such allegations as statutory claims. His assertion of such claims against Imprint — in the Arbitration and again in this action — constitutes an additional breach of the Agreement.

40. Third, Shah breached the Agreement's dispute-resolution provisions by commencing this civil action on June 13, 2026 while the Arbitration he himself initiated — and in which he invoked those very provisions — remained pending. *See* Ex. A §§ 22, 36. Thereby forcing Imprint to litigate the same dispute in two forums simultaneously from June 13, 2026 until the parties agreed, at the July 13, 2026 hearing, to terminate the Arbitration without prejudice, and causing Imprint to incur duplicative fees and costs during that period and in connection with the wind-down of the Arbitration.

41. As a direct and proximate result of Shah's breaches, Imprint has incurred damages in an amount to be proven at trial and in no event less than $75,000, including the attorneys' fees and costs Imprint has been compelled to expend defending duplicative, improper proceedings in two forums, together with pre- and post-judgment interest and reasonable attorneys' fees and costs as provided by the Agreement.

**FOURTH COUNTERCLAIM**

**(Declaratory Judgment, 28 U.S.C. §§ 2201–2202 — Against Counter-Defendant Shah)**

42. Imprint realleges and incorporates by reference each of the foregoing paragraphs of these Counterclaims as though fully set forth herein.

43. An actual, present, and justiciable controversy exists between Imprint and Shah concerning their respective rights and obligations under the Agreement and concerning the lawfulness of the parties' respective conduct.

44. Imprint is entitled to a judicial declaration that: (a) Shah accepted and is bound by the Agreement, including the incorporated Privacy Policy; (b) Shah consented to the data collection and usage practices disclosed in the Agreement and Privacy Policy, including the use of third-party service providers and integrated technologies; (c) the parties' disputes are governed by Texas substantive law pursuant to Section 36 of the Agreement; (d) Shah's claims are subject to the Agreement's mandatory arbitration, indemnification, third-party-claims, and limitation-of-liability provisions *See* Ex. A §§ 21–24, 36; and (e) Shah is obligated to indemnify, defend, and hold harmless Imprint from and against all claims, losses, liabilities, damages, expenses, and costs, including reasonable attorneys' fees, arising out of or relating to his use of the Website, including the fees and costs of defending this action and the Arbitration.

**FIFTH COUNTERCLAIM**

**(Aiding and Abetting; Civil Conspiracy; Concert of Action — Against All Counter-Defendants)**

45. Imprint realleges and incorporates by reference each of the foregoing paragraphs of these Counterclaims as though fully set forth herein. This Counterclaim is pleaded under the substantive law that the Court determines governs — whether Texas law, pursuant to Section 36 of the Agreement, or California law — each of which recognizes liability for those who knowingly aid and abet, conspire in, or act in concert to accomplish an unlawful act.

46. On information and belief, the Doe Counter-Defendants including Gauge AI had actual knowledge of Shah's unlawful interception of the Website's communications and of his engineered-claim enterprise; agreed with Shah and with one another on the object and course of that conduct; and knowingly provided substantial assistance and encouragement in its accomplishment, including by identifying targets, performing or facilitating the DevTools network-capture activity, preparing and disseminating form demand notices and pleadings, and administering, financing, and sharing in the proceeds of the enterprise.

47. Each Counter-Defendant committed one or more overt acts in furtherance of the common design, and the unlawful conduct alleged herein — including the violations of Cal. Penal Code § 631(a) and 18 U.S.C. § 2511 alleged

above — was undertaken pursuant to, and in furtherance of, that agreement and common design.

48. As a direct and proximate result, Imprint has suffered damages in an amount to be proven at trial, and each Counter-Defendant is jointly and severally liable for the damages caused by the conduct alleged herein. The Counter-Defendants' conduct was willful, malicious, oppressive, and undertaken with conscious disregard of Imprint's rights, entitling Imprint to exemplary or punitive damages to the extent permitted by applicable law.

**VEXATIOUS-LITIGANT ALLEGATIONS AND RESERVATION REGARDING SANCTIONS**

49. Shah's conduct described above — including his filing of 177 arbitration proceedings between 2024 and 2026, his dissemination of substantively identical form demand notices at industrial scale, his admitted access to the Website for the sole purpose of engineering a claim, his criminal history of extortionate conduct, and his commencement of this duplicative action while his own arbitration remained pending, conduct that ultimately required the parties to agree to terminate the Arbitration in order to avoid dual-forum litigation — demonstrates a systematic pattern of frivolous, harassing, and bad-faith litigation. Imprint will seek, by appropriately noticed motion, an order pursuant to Local Rule 83-8 and this Court's inherent authority, *See De Long v. Hennessey*, 912 F.2d

1144, 1147–48 (9th Cir. 1990); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057–58 (9th Cir. 2007), declaring Shah a vexatious litigant and imposing appropriate pre-filing conditions, and Imprint expressly reserves all rights and remedies under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, Cal. Code Civ. Proc. §§ 128.5, 128.7, and 391 et seq., and Tex. Civ. Prac. & Rem. Code §§ 10.001–10.004, to the extent applicable. Another judge of this District has already made precisely these findings: the July 20, 2026 Vexatious Litigant Order entered in *Shah v. Crain Communications, Inc.* declared Shah a vexatious litigant and imposed a prefiling requirement in this District for any claims arising under CIPA or other related digital privacy claims. *See* Exhibit J. That order, together with the arbitral record — including the Arbitrator's May 13, 2026 denial of Imprint's request for relief addressed to the same conduct (Exhibit K) — will be presented in support of Imprint's motion.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaimant Imprint.Com, LLC respectfully requests that the Court enter judgment as follows:

A. On the Complaint: that Plaintiff take nothing; that the Complaint be dismissed in its entirety, with prejudice; and that judgment be entered in Imprint's favor and against Plaintiff on each purported cause of action;

B. On the First Counterclaim: judgment in Imprint's favor and against all Counter-Defendants, jointly and severally, for violation of Cal. Penal Code § 631(a), with statutory damages of $5,000 per violation pursuant to Cal. Penal Code § 637.2, and a permanent injunction prohibiting the Counter-Defendants from accessing or visiting the Website;

C. On the Second Counterclaim: judgment in Imprint's favor and against all Counter-Defendants, jointly and severally, for violation of 18 U.S.C. § 2511(1)(a), with such damages, equitable and declaratory relief, and attorneys' fees and costs as the Court deems just and appropriate pursuant to 18 U.S.C. § 2520;

D. On the Third Counterclaim: judgment in Imprint's favor and against Shah for breach of the Agreement, with damages in an amount to be proven at trial and in no event less than $75,000, together with Imprint's reasonable attorneys' fees and costs as provided by the Agreement;

E. On the Fourth Counterclaim: a declaratory judgment as set forth above, including a declaration that Shah is obligated to indemnify, defend, and hold harmless Imprint from and against all claims, losses, liabilities, damages, expenses, and costs, including reasonable attorneys' fees, and arbitration fees arising out of or relating to his use of the Website;

F. On the Fifth Counterclaim: judgment in Imprint's favor and against all Counter-Defendants, jointly and severally, for aiding and abetting, civil

conspiracy, and concert of action, with compensatory damages in an amount to be proven at trial and exemplary or punitive damages to the extent permitted by applicable law;

G. An order, upon appropriately noticed motion, declaring Shah a vexatious litigant and imposing pre-filing conditions pursuant to Local Rule 83-8 and the Court's inherent authority, together with such enhanced, exemplary, or sanctions-based monetary relief as the Court deems just and proper under applicable law;

H. An award of Imprint's reasonable attorneys' fees and costs of suit to the fullest extent permitted by the Agreement and applicable law;

I. Pre-judgment and post-judgment interest at the maximum lawful rate; and

J. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38-1, Imprint demands a trial by jury on all issues so triable.

Dated: July 23, 2026

Respectfully submitted,

*/s/ Ashwini Arun*

Ashwini Arun, Esq. (Cal. Bar No. 345112)
633 West Fifth Street, Office 2618E
Los Angeles, CA 90071
Telephone: (650) 314-9970
aaruniplaw@gmail.com

Ray Ashburg (Admitted Pro Hac Vice)
Shabnam Hajian (Admitted Pro Hac Vice)
AVONTIS
112 S. Tryon Street, Suite 809
Charlotte, NC 28284
Telephone: (704) 408-2530
Ashburg@Avontislaw.com |
Hajian@Avontislaw.com

*Attorneys for Defendant and Counterclaimant Imprint.Com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I caused a true and correct copy of the foregoing **DEFENDANT IMPRINT.COM, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT; AND COUNTERCLAIMS** to be filed with the Clerk of the Court using the CM/ECF system. Pursuant to Plaintiff/Counter-Defendant Vivek Shah's representation that he receives service through CM/ECF, service was effected through the CM/ECF system. A courtesy copy was also sent by electronic mail to newvivekshah@gmail.com.

*/s/ Ashwini Arun*
Ashwini Arun, Esq.