Vivek Shah
1301 N. Broadway, Ste. 32167
Los Angeles, CA 90012
Telephone: (224) 246-2874
Email: newvivekshah@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| VIVEK SHAH,<br><br>Plaintiff,<br><br>v.<br><br>IMPRINT.COM LLC,<br><br>Defendant.<br>______________________________<br><br>IMPRINT.COM, LLC,<br><br>Counter-Plaintiff,<br><br>v.<br><br>VIVEK SHAH; and JOHN DOES 1–10, inclusive,<br><br>Counter-Defendants. | Case No. 2:26-cv-06526-MWC-PD(x)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT AND TO REQUIRE SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 9, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6A, First Street Courthouse<br>Judge: Hon. Michelle Williams Court<br>Magistrate Judge: Hon. Patricia Donahue<br><br>Complaint Filed: June 13, 2026<br>Trial Date: Not Set |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

- A. The Claim and the Arbitration ........ 2
- B. Jules, the Federal Filing, and Imprint's Refusal of a Stay ........ 2
- C. Settlement ........ 3
- D. My Address and What I Disclosed ........ 4
- E. Imprint's Remedies in This Court ........ 4

III. ARGUMENT ........ 4

- A. The Standard Is Demanding, and the Burden Is Imprint's ........ 4
- B. Imprint Has Not Supplied an Adequate Record; It Has Borrowed One That Is Wrong on Its Face ........ 5
- C. No Substantive Finding of Frivolousness Can Be Made ........ 7
- D. No Finding of Harassment Can Be Made; the Record Shows the Opposite ........ 9
- E. The 177 Arbitrations Prove Nothing Imprint Needs ........ 11
- F. The "Needless Expense" Imprint Describes Was Incurred in the Forum Its Own Terms Required, and Doubled by Its Own Choice ........ 11
- G. Pro Se Status Weighs Against Restriction ........ 12
- H. Lesser Remedies Were Available and Untried, and the Ones Imprint Says It "Tried" Were Never Decided ........ 12
- I. The Motion Duplicates the Crain Order ........ 13
- J. Security Must Be Denied ........ 13
- K. The 2013 Press Release Should Be Disregarded ........ 15
- L. New Matter on Reply Should Not Be Considered ........ 15

IV. CONCLUSION ........ 16

## TABLE OF AUTHORITIES

### Cases

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975)..................14

Badgerow v. Walters, 596 U.S. 1 (2022)............................................................3

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)....................................................12

De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990)........ 4, 5, 7, 9, 11, 12, 13, 14

Heerde v. Learfield Commc'ns, LLC, 741 F. Supp. 3d 849 (C.D. Cal. 2024)..........8

In re Zynga Privacy Litig., 750 F.3d 1098 (9th Cir. 2014).......................................8

Jules v. Andre Balazs Properties, 608 U.S. 200 (2026)..............................1, 2, 3, 10

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001).......................................5

Molski v. Evergreen Dynasty Corp., 500 F.3d 1047 (9th Cir. 2007)....................4, 8

Moy v. United States, 906 F.2d 467 (9th Cir. 1990) .....................................5, 7, 11

Pavilonis v. King, 626 F.2d 1075 (1st Cir. 1980)....................................................4

Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996) ..................................................16

Ringgold-Lockhart v. County of Los Angeles, 761 F.3d 1057 (9th Cir. 2014)...1, 5, 7, 9, 11, 12

Smith v. Spizzirri, 601 U.S. 472 (2024) ...............................................................10

Warren v. Guelker, 29 F.3d 1386 (9th Cir. 1994) ..................................................12

Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003) ....................................................5

Zamani v. Carnes, 491 F.3d 990 (9th Cir. 2007)....................................................16

### Statutes

18 U.S.C. § 2520 .................................................................................................14

Cal. Civ. Proc. Code § 391 .............................................................................11, 14

Cal. Civ. Proc. Code § 391.3 .................................................................................13

Cal. Gov. Code §§ 6205–6211...................................................................................4

Cal. Penal Code § 631(a) ...................................................................................8, 13

Cal. Penal Code § 637.2 ........ 10, 14

**Rules**

Fed. R. Civ. P. 11 ........ 1, 4, 12

Fed. R. Civ. P. 12 ........ 12

Fed. R. Civ. P. 26(g) ........ 12

Fed. R. Civ. P. 37 ........ 12

Fed. R. Civ. P. 41(a)(1)(A)(i) ........ 7

Fed. R. Evid. 404(b)(1) ........ 15

Fed. R. Evid. 408(b) ........ 9

C.D. Cal. L.R. 7-3 ........ 1, 3, 9

C.D. Cal. L.R. 7-10 ........ 16

C.D. Cal. L.R. 83-8.2 ........ 14

C.D. Cal. L.R. 83-8.3 ........ 13

C.D. Cal. L.R. 83-8.4 ........ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Imprint asks this Court for the most severe remedy the Local Rules permit, a second vexatious-litigant declaration, a second pre-filing order, and $75,000 in security, in a case in which it has never moved to dismiss, never served a Rule 11 motion, and never sought a discovery sanction. It skipped every ordinary remedy and led with the extraordinary one. The Ninth Circuit's instruction runs the other way: "pre-filing orders should be a remedy of last resort." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014).

The Motion also rests on a record that does not say what Imprint says it says. The catalog Imprint "incorporates by reference" (Mot. 17) is under direct challenge in a pending Ninth Circuit appeal. Imprint's own table lists as "dismissed" a case the California Court of Appeal reversed two weeks before Imprint filed. Imprint's declarant concedes that the 177-arbitration figure comes from a report that "does not state the claims asserted in any matter." And the neutral Imprint itself selected denied Imprint's dispositive motion in its entirety and rejected, as a matter of law, the "not a bona fide consumer" theory that runs through every page of the Motion. The one party in this case that has demanded money to end the litigation is Imprint, which asked me on August 6, 2026, during the very Local Rule 7-3 conference its counsel

describes under oath without mentioning it, to pay approximately $20,000 to reimburse its arbitration costs. Shah Decl. ¶¶ 47–48.

I filed this action thirty days after the Supreme Court decided *Jules v. Andre Balazs Properties*, to preserve a federal forum in which either party could confirm or vacate the arbitration award. I offered in writing to stay it under Section 3 of the Federal Arbitration Act. Imprint refused, demanded dismissal with prejudice, told the Arbitrator it wanted to proceed in court, and now calls the resulting federal case harassment. The Motion should be denied.

## II. STATEMENT OF FACTS

### A. The Claim and the Arbitration

On August 12, 2025, I submitted a search query on imprint.com and inspected the browser's network activity. The filter for my own search term matched seventeen, eighteen, and twenty outbound requests in three successive inspections. Shah Decl. ¶ 82. My Complaint counts only the three recipients I could identify by name. *Id.* Every query alleged in the Complaint predates my August 18, 2025 demand notice, and I have not returned to the Website since. *Id.* ¶ 81. Imprint's Terms required arbitration, and I commenced AAA Case No. 01-25-0005-7196. *Id.* ¶ 21.

The Arbitrator authorized Imprint to move to dismiss on nine enumerated gateway issues. *Id.* ¶ 67. Because Imprint's motion relied on evidence outside the

pleadings, she converted it in part to a motion for summary adjudication. *Id.* ¶ 68; Ashburg Decl. Ex. 5 at 4. On May 13, 2026, she denied it "in its entirety." Ex. 5 at 31. She held that "CIPA is an individual privacy protection statute, not a consumer protection statute," that "neither CIPA nor ECPA standing require consumer status, but rather a redressable invasion of privacy," that the FAA preempts Imprint's Texas choice-of-law clause, and that two risk-allocation provisions of Imprint's Terms were unconscionable. Ex. 5 at 8; Shah Decl. ¶ 70. Imprint also asked her to address my "serial arbitration filings." She did not reject that request on its merits; she held it "outside the parameters of the granted motion practice." Ex. 5 at 31; Shah Decl. ¶ 72.

### B. *Jules*, the Federal Filing, and Imprint's Refusal of a Stay

On April 9, 2026, I wrote to the Arbitrator, copying Imprint's counsel, that "one of us might end up filing a Petition to Vacate in court." Shah Decl. ¶ 22, Ex. G. On May 14, 2026, the Supreme Court held that "a federal court with pre-existing jurisdiction over claims that it stayed pending arbitration under §3 can adjudicate a §9 or §10 motion even if that motion does not present, on its face, an independent basis for federal jurisdiction." *Jules v. Andre Balazs Properties*, 608 U.S. 200, ___ (2026) (slip op. at 7). Read with *Badgerow v. Walters*, 596 U.S. 1, 4 (2022) ("a court may look only to the application actually submitted to it in assessing its jurisdiction"), *Jules* meant that without a stayed federal action, neither party would

have a federal forum for post-award review. I filed this action on June 13, 2026 for that reason, intending it to be stayed. Shah Decl. ¶¶ 24–27. I filed *Shah v. Udemy, Inc.* the same day for the same reason. *Id.* ¶ 35.

The Clerk did not issue a summons until July 1, 2026. I served Imprint on July 2. *Id.* ¶¶ 29–31, Ex. F. On July 9 I offered to stipulate to a Section 3 stay, and on July 10 I confirmed in writing that I remained "ready to file the stipulated Section 3 stay in the federal action immediately upon Respondent's agreement." *Id.* ¶ 32, Ex. H. Imprint refused and demanded dismissal with prejudice. *Id.* ¶ 33. Udemy accepted the same stipulation, and Judge Anderson entered the stay on July 10. *Id.* ¶ 35, Ex. M. At the July 13 case management conference, Imprint's counsel pressed to proceed in this Court rather than in arbitration, and I relented. *Id.* ¶¶ 38–39. On July 17, the Arbitrator dismissed the arbitration without prejudice on the parties' joint request, denied "both parties' respective motions for an award of fees, reallocation of costs, and for sanctions," and found "no prevailing party." Ashburg Decl. Ex. 6 ¶¶ 3, 6.

### C. Settlement

Neither side made a settlement offer or demand during the arbitration. Shah Decl. ¶¶ 42–43. On July 23, 2026, I proposed "a non-monetary mutual release" to close the matter. *Id.* ¶ 44, Ex. I. On August 4, Imprint's counsel wrote that he was "not authorized to discuss or recommend any settlement that does not include

monetary compensation to my client." *Id.* ¶ 46. On August 6, during the Local Rule 7-3 conference, he asked me to pay approximately $20,000 to reimburse Imprint's arbitration costs. *Id.* ¶¶ 47–48. Udemy, by contrast, resolved by a non-monetary release. *Id.* ¶ 54.

**D. My Address and What I Disclosed**

I am enrolled in California's Safe at Home program, Cal. Gov. Code §§ 6205–6211, which makes my current residential address confidential. Shah Decl. ¶ 4. The address Imprint calls a "coworking mailbox" (Mot. 13) is a commercial virtual mailbox; I have no relationship with the co-working company whose marketing pages Imprint attached. *Id.* ¶¶ 5–7. In the arbitration, Discovery Order No. 3 denied Imprint's residence requests as framed and directed disclosure "consistent with his participation in California's Safe at Home program." *Id.* ¶ 10, Ex. C. I complied on July 6, 2026, disclosing under oath, seven times, that I resided at 723 Huntley Dr. #A, West Hollywood during the relevant period, and volunteering the location from which I accessed the Website. *Id.* ¶¶ 12–15, Ex. D. Imprint never moved to compel anything further. *Id.* ¶ 16.

**E. Imprint's Remedies in This Court**

Imprint has not moved to dismiss, has not served a Rule 11 motion or safe-harbor letter, and has not sought a discovery sanction. *Id.* ¶¶ 89–92.

## III. ARGUMENT

### A. The Standard Is Demanding, and the Burden Is Imprint's

"[P]re-filing orders are an extreme remedy that should rarely be used." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). "Courts should not enter pre-filing orders with undue haste because such sanctions can tread on a litigant's due process right of access to the courts." *Id.* "The use of such measures against a pro se plaintiff should be approached with particular caution." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)).

Before entering one, the Court must give notice and an opportunity to be heard, compile an adequate record for review, make "substantive findings as to the frivolous or harassing nature of the litigant's actions," and ensure the order is "narrowly tailored to closely fit the specific vice encountered." *De Long*, 912 F.2d at 1147–48. The substantive inquiry weighs five factors, including "whether the litigant has an objective good faith expectation of prevailing" and "whether other sanctions would be adequate to protect the courts and other parties." *Ringgold-Lockhart*, 761 F.3d at 1062. "The final consideration—whether other remedies 'would be adequate to protect the courts and other parties' is particularly important." *Id.* Two principles govern the findings. "An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also

be patently without merit." *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990). And "[m]erely because a claim lacks jurisdiction does not make the claim per se frivolous." *De Long*, 912 F.2d at 1148.

### B. Imprint Has Not Supplied an Adequate Record; It Has Borrowed One That Is Wrong on Its Face

An adequate record "should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *De Long*, 912 F.2d at 1147. Imprint does not attempt that. It "incorporates by reference" the catalog in the *Crain* order (Mot. 17) and asks the Court to adopt that court's findings "without independent investigation, and without requiring Imprint to lodge the complete dockets of the twenty-nine proceedings." RJN 6. That approach fails three times over.

First, the catalog is under direct challenge. I appealed the *Crain* order; the appeal is pending as No. 26-4739, and my opening brief attacks the accuracy and adequacy of that catalog. Shah Decl. ¶¶ 57–58, Ex. R. A court may notice another court's order "not for the truth of the facts recited therein, but for the existence of the opinion." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). "Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003). Imprint's own request concedes that notice extends "not to the truth of disputed

factual assertions contained within them," RJN 4, and then asks the Court to do exactly that.

Second, the borrowed record is wrong on its face. Imprint's table (Mot. 18–19) lists *Wpromote* as "Complaint dismissed." On August 19, 2026, two weeks before Imprint filed, the Court of Appeal reversed that judgment and remanded with directions to grant me leave to amend. Shah Decl. ¶ 51, Ex. J. The table lists *Amplitude* as stayed; the parties dismissed it by joint stipulation on July 24, 2026, each side bearing its own costs. *Id.* ¶ 53. It lists *Plaid* as dismissed; it was dismissed by stipulation. *Id.* ¶ 52. It presents *Udemy* as an abandonment; Udemy itself filed the stipulation to stay, and the case resolved by a non-monetary release with no prevailing party. *Id.* ¶ 54. Four of the matters Imprint treats as finally determined against me are on appeal. *Id.* ¶ 56.

Third, the borrowed record omits what cuts against Imprint. The *Crain* court stated that it would catalog "only the cases that were determined adversely against, or voluntarily dismissed by, Plaintiff." RJN Ex. A at 2. It excluded, by design, every case in which my claims were sustained. Imprint then told this Court that "[o]f those that produced a ruling on the pleadings, Shah lost every one," and described my record as one "nearly all of which he lost or abandoned at the pleading stage." Mot. 9, 19. Neither statement is true. Judge Scarsi denied Citibank's motion to dismiss outright. Judge Frimpong sustained my ECOA claim against Capital One in 2025

and, in May 2026, denied dismissal as to every remaining claim. Judge Hwang twice denied dismissal of claims against JPMorgan Chase. Shah Decl. ¶ 65, Ex. O. And in the first Citibank matter, an arbitrator awarded me damages on the merits and Judge Blakey confirmed the award and entered judgment in my favor, a result the *Crain* catalog itself records. *Id.* ¶¶ 63–64, Ex. N. A list assembled to exclude every favorable outcome, then presented as proof that there were none, is not an adequate record for review.

### C. No Substantive Finding of Frivolousness Can Be Made

*Jurisdictional dismissals are not frivolousness findings.* Imprint concedes that the diversity defects in *Russco57* and *Secureworks* do not recur here because I plead federal-question jurisdiction. Mot. 24. That leaves *Talentbridge*, a standing ruling entered sixteen days before I filed and now on appeal. Shah Decl. ¶ 56. "Merely because a claim lacks jurisdiction does not make the claim per se frivolous." *De Long*, 912 F.2d at 1148. None of the three dismissals was with prejudice, and none reached the merits. Shah Decl. ¶ 55. The only adjudicator to consider standing on a claim against Imprint, applying a summary-judgment standard, found it: CIPA and ECPA require "a redressable invasion of privacy," which I alleged and documented. Ashburg Decl. Ex. 5 at 8. A claim that survives a converted summary-adjudication motion before the neutral the defendant chose is not "patently without merit." *Moy*, 906 F.2d at 470. It also answers the second *Safir* factor directly: when I filed on June

13, 2026, I held a ruling from the Arbitrator, one month old, rejecting every gateway defense Imprint had raised, which is an "objective good faith expectation of prevailing" by any measure. *Ringgold-Lockhart*, 761 F.3d at 1062; Shah Decl. ¶ 73.

*Stipulated dismissals, stays, and reversals are not losses.* "A successful motion is neither 'baseless' nor 'frivolous.'" *Ringgold-Lockhart*, 761 F.3d at 1065. Neither is a stipulated dismissal, a stay pending a related class action, a voluntary dismissal under Rule 41(a)(1)(A)(i), or a judgment reversed on appeal. Imprint's count of nine voluntary dismissals (Mot. 22) sweeps in cases that settled, cases I dismissed to proceed individually after opting out of class actions, and cases dismissed after jurisdictional rulings with leave to refile. Exercising a right the Rules confer is not evidence of abuse.

*The legal theory is established.* The premise of my Section 631(a) claims, that search terms transmitted to third parties are the "contents" of a communication, is settled in this Circuit. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) ("a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 858–59 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."). Imprint has not moved to dismiss because it cannot contend that the Complaint fails to state a claim.

*Similarity and volume are not vexatiousness.* Imprint's table stamps entry after entry "Copied complaint." Mot. 18–19. But "the textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant," and "there is nothing inherently vexatious about using prior complaints as a template." *Molski*, 500 F.3d at 1061. Nor is volume: "the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not a basis for designating a litigant as 'vexatious.'" *Id.* The *Molski* order survived because the district court found the plaintiff had "plainly lied" in alleging thirteen nearly identical physical injuries over five days. *Id.* at 1052, 1059. No comparable finding is possible here. My claims rest on documented network captures of transmissions that had already occurred, not on injuries I claim to have suffered again and again. Imprint's borrowed "hot stove" analogy (Mot. 23) inverts the facts: I did not know whether imprint.com intercepted search terms until I looked, I have not returned since, and I have never proceeded against the same operator twice for interceptions occurring after I learned of them. Shah Decl. ¶¶ 80–81, 85.

*The complaints are not "word-for-word identical."* The *Udemy* and *Imprint* complaints name different defendants, websites, recipients, and queries; this Complaint adds a contract claim Udemy's did not contain; and they allege different numbers of violations. Shah Decl. ¶ 61. They share a description of the same statutory theory because it is the same statutory theory.

**D. No Finding of Harassment Can Be Made; the Record Shows the Opposite**

Courts "must 'be careful not to conclude that particular types of actions filed repetitiously are harassing,' and must '[i]nstead ... discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court.'" *Ringgold-Lockhart*, 761 F.3d at 1064 (quoting *De Long*, 912 F.2d at 1148 n.3). Imprint's harassment theory has three parts. Each fails on the record.

*"Coercive settlements."* No settlement demand was made in the arbitration. I said so in writing to the Arbitrator on July 10, and Imprint's counsel, replying at length three days later, did not dispute it. Shah Decl. ¶¶ 42–43, Ex. H. The first settlement communication between the parties was my July 23 offer of a non-monetary release. *Id.* ¶ 44. Imprint answered that it would not discuss any settlement "that does not include monetary compensation to my client," and on August 6 asked me to pay approximately $20,000. *Id.* ¶¶ 46–47. That request was made during the Local Rule 7-3 conference that Mr. Ashburg describes at paragraphs 3 through 5 of his declaration without mentioning it. *Id.* ¶ 48. The Udemy matter, filed the same day on the same theory, resolved by non-monetary release. *Id.* ¶ 54. The only party that has asked for money to end this litigation is Imprint.

Rule 408 does not bar this evidence. The Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention

of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Rebutting a charge that I litigate to extract payment is such a purpose. Imprint put my motive at issue.

*"Duplicative litigation."* Imprint says I litigated in two forums at once and that "duplication was a method." Mot. 24–25. The chronology refutes it. I flagged the post-award-forum problem on April 9. *Jules* issued May 14. I filed June 13, thirty days later, to create the Section 3 anchor that *Jules* requires. The Clerk did not issue a summons until July 1, and I served Imprint on July 2. Shah Decl. ¶¶ 22–31. On July 9 I offered to stipulate to a stay, and on July 10 I repeated the offer in writing. *Id.* ¶ 32. Imprint refused. *Id.* ¶ 33. Imprint never sought the stay itself, although "§3 of the FAA compels the court to stay the proceeding" on request. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Imprint then told the Arbitrator it wanted to proceed in court, and the arbitration was dismissed on what the Arbitrator recorded as the parties' joint request. Shah Decl. ¶¶ 38–39; Ashburg Decl. Ex. 6. Udemy accepted the same stipulation Imprint refused, and no parallel litigation occurred in that case. Shah Decl. ¶ 35. The thirty-four "duplicative" days Imprint counts include eighteen before a summons existed and sixteen during which Imprint was refusing the stay that would have ended the duplication. *Id.* ¶ 36. The Arbitrator's own order, reciting that "the parties agreed and jointly requested" dismissal, refutes the sworn assertion that dismissal came "at the suggestion of Shah." Ashburg Decl. ¶ 17, Ex. 6.

*An "engineered" claim by a "non-consumer."* The Arbitrator rejected this theory as a matter of law: "CIPA does not require claimant to qualify as a consumer because, unlike CLRA and DTPA, CIPA is an individual privacy protection statute, not a consumer protection statute." Ashburg Decl. Ex. 5 at 8. The statute says the same. Section 637.2(a) gives a cause of action to "[a]ny person who has been injured by a violation of this chapter," and Section 637.2(c) provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." A plaintiff who documents a violation with the browser's own tools has done what the statute contemplates, not manufactured a claim. And the August 18, 2025 notice Imprint calls a demand for payment was the informal dispute-resolution notice that Imprint's own Terms require before arbitration; the Arbitrator listed "satisfaction of the T&C's pre-arbitration notice requirement" as the first gateway issue Imprint was permitted to brief. Ashburg Decl. Ex. 5 at 3; Ex. 2.

### E. The 177 Arbitrations Prove Nothing Imprint Needs

Imprint's largest number cannot supply the missing finding, for three independent reasons. First, private arbitrations are not "litigation." The state statute Imprint invokes defines that term as "any civil action or proceeding, commenced, maintained or pending in any state or federal court." Cal. Civ. Proc. Code § 391(a). An AAA consumer arbitration is neither. Second, the record says nothing about their

content. Imprint's declarant concedes that the report "does not state the claims asserted in any matter, and does not state filing dates; the dates it provides are closing dates only." Ashburg Decl. ¶ 13. Imprint nonetheless asks for a CIPA-specific pre-filing order on the strength of a number that, by its own declarant's account, cannot be tied to CIPA at all. In fact the arbitrations span ECOA, VPPA, UCL, CLRA, RICO, contract, and fraud claims. Shah Decl. ¶ 76. The 117 matters marked "N/A" show only that the report does not record how they ended. *Id.* ¶ 78. Third, the Court must "look at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's claims." *Ringgold-Lockhart*, 761 F.3d at 1064 (quoting *De Long*, 912 F.2d at 1148). Number without content is exactly the "showing of litigiousness" on which an injunction "cannot issue." *Moy*, 906 F.2d at 470.

### F. The "Needless Expense" Imprint Describes Was Incurred in the Forum Its Own Terms Required, and Doubled by Its Own Choice

Imprint says it has "borne that cost twice over, having litigated the same dispute in two forums for over a month." Mot. 26. The first forum was the one Imprint's Terms mandate; the expense Imprint incurred there was the expense of a dispositive motion it lost in its entirety and a fee request the Arbitrator denied. Ashburg Decl. Exs. 5, 6. The second forum ran alongside the first for exactly as long as Imprint refused the stay I offered, and not a day longer. Shah Decl. ¶¶ 32–36. A defendant that declines the stipulation that would have ended parallel proceedings,

obtains the dismissal it asked for, and then bills the plaintiff for the overlap has not shown needless expense caused by the plaintiff.

### G. Pro Se Status Weighs Against Restriction

Imprint treats my self-representation as an aggravating factor. Mot. 26. The Ninth Circuit treats it as a reason for restraint: "The use of such measures against a pro se plaintiff should be approached with particular caution." *De Long*, 912 F.2d at 1147.

### H. Lesser Remedies Were Available and Untried, and the Ones Imprint Says It "Tried" Were Never Decided

The fifth factor is "particularly important," and "pre-filing orders should be a remedy of last resort." *Ringgold-Lockhart*, 761 F.3d at 1062. "[W]hen there is ... conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 1065 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). Before entering a pre-filing order, a district court "assuredly should have considered whether imposing sanctions such as costs or fees ... would have been an adequate deterrent." *Id.*

Imprint tried nothing in this Court. It filed no motion to dismiss; if the Complaint were baseless, Rule 12 was the remedy. It served no Rule 11 motion, although "Rule 11's express goal is deterrence," *id.* (quoting *Warren v. Guelker*, 29

F.3d 1386, 1390 (9th Cir. 1994)), and never gave the safe-harbor notice Rule 11(c)(2) requires. It brought no motion under Rule 26(g) or Rule 37. Shah Decl. ¶¶ 89–92. Imprint's answer is that "lesser measures were already tried" in the arbitration and that my conduct "went unexamined." Mot. 27. Its own exhibit explains why: the Arbitrator "declines to reach issues outside the parameters of the granted motion practice." Ashburg Decl. Ex. 5 at 31. Imprint raised "serial arbitration filings" in a motion limited to nine gateway issues that did not include the subject. Shah Decl. ¶ 72. A request presented in the wrong vehicle and never decided is not a lesser remedy tried and found wanting. And the July 17 fee denial ran against both parties and found "no prevailing party." Ashburg Decl. Ex. 6 ¶¶ 3, 6.

### I. The Motion Duplicates the *Crain* Order

Imprint "states candidly that a pre-filing order already restrains Shah's new CIPA filings in this District," and asks for a second order that adds the words "Wiretap Act" and a disclosure requirement. Mot. 30–31. A pre-filing order must be "narrowly tailored to closely fit the specific vice encountered." *De Long*, 912 F.2d at 1148. The vice Imprint identifies is already the subject of an order Imprint concedes covers it; that order reaches "other related digital privacy claims," which include the Wiretap Act claim I plead alongside every Section 631(a) claim. RJN Ex. A at 11. A second declaration adds a second adjudication of the same question,

on a record borrowed from the first, while the first is on appeal. That multiplies proceedings without adding protection. It is a reason to deny relief, not to grant it.

**J. Security Must Be Denied**

*No finding supports it under either standard.* Local Rule 83-8.3 requires "a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse." Imprint's evidence of abuse in this Court is a complaint it has not moved to dismiss and a stay offer it refused. If the Court instead proceeds by reference to the state statute, as Imprint alternatively invites (Mot. 28), security requires a finding "that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant." Cal. Civ. Proc. Code § 391.3(a). Imprint never addresses that element, and it cannot: the neutral it selected denied its dispositive motion in its entirety and sustained the standing and choice-of-law positions on which this case turns. Ashburg Decl. Ex. 5. Nor does the state statute relieve Imprint of the federal showing. Local Rule 83-8.4 provides that "nothing in this rule shall be construed to require that such a procedure be followed," and the *De Long* requirements govern any pre-filing order a federal court enters regardless of the counting rule Imprint borrows from Section 391(b)(1). Imprint's tally under that rule also counts matters that settled, matters dismissed to proceed individually, and matters on appeal, and it excludes by definition the 177 arbitrations, which are not "litigation" under Section 391(a).

*The $75,000 figure secures nothing awardable against a vexatious litigant.* Local Rule 83-8.2 authorizes security only "to secure the payment of any costs, sanctions or other amounts which may be awarded against a vexatious litigant." Imprint's figure has three components, and none qualifies.

No fee award can be entered against me on these claims. Penal Code section 637.2 provides statutory damages and injunctive relief and contains no fee provision for either side. The Wiretap Act awards "a reasonable attorney's fee and other litigation costs reasonably incurred" to the person entitled to recover under Section 2520(a), that is, "any person whose wire, oral, or electronic communication is intercepted," not to a defendant. 18 U.S.C. § 2520(a), (b)(3). Absent statute or contract, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Imprint's only fee theory is its contractual indemnity counterclaim, a disputed damages claim rather than "costs, sanctions or other amounts which may be awarded against a vexatious litigant," and one the Arbitrator has already undercut by severing Imprint's risk-allocation provisions as unconscionable. Shah Decl. ¶ 70.

Roughly $62,800 of Imprint's $75,852 total is fees and costs from the arbitration. Ashburg Decl. ¶¶ 8, 28. The Arbitrator denied Imprint's motion to recover them and found "no prevailing party." Ashburg Decl. Ex. 6 ¶¶ 3, 6. Costs a

neutral has already declined to shift are not amounts "which may be awarded" here, and demanding them from me on August 6 is the very conduct Imprint attributes to me.

Imprint's fee figures are approximations, allocations, and estimates, Ashburg Decl. ¶¶ 8, 18, 28–29, and not one is supported by an invoice, time record, or engagement letter. Shah Decl. ¶¶ 94–95. The Court should not condition a pro se plaintiff's access to it on $75,000 of estimates.

*The "opaque by design" rationale is false.* Imprint says my "asset position and location are opaque by [my] own design." Mot. 32. My location is confidential by operation of a California statute protecting participants in a state address-confidentiality program, and I disclosed my residence for the relevant period under oath, seven times, after the Arbitrator ruled on exactly this dispute. Shah Decl. ¶¶ 4–17. The "coworking mailbox" is a virtual mailbox, and the co-working company's marketing pages Imprint attached have nothing to do with me. *Id.* ¶¶ 6–7. The deposition testimony on which Imprint rests its "no assets" claim does not exist; I was never asked about my financial condition. *Id.* ¶ 96.

**K. The 2013 Press Release Should Be Disregarded**

Imprint offers a 2013 press release "not for the truth of any statement within it," Ashburg Decl. ¶ 25, and then argues from its contents that I have "demonstrated familiarity with using engineered pressure to extract payment." Mot. 25. A document

offered not for its truth cannot prove the conduct it describes. Evidence of a prior conviction "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). And the release misdescribes the conviction. Shah Decl. ¶ 87. My concurrently filed objections address this exhibit.

### L. New Matter on Reply Should Not Be Considered

Imprint bears the burden and must make its case in its opening papers. "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). And "where new evidence is presented in a reply ... the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). If Imprint supplies on reply the billing records, case-by-case dispositions, or new theories its Motion omits, I ask that the Court disregard them or grant leave for a sur-reply under Local Rule 7-10.

## IV. CONCLUSION

The Motion seeks a last-resort remedy while skipping every ordinary one, on a record Imprint borrowed, did not verify, and presented as something it is not. I ask the Court to deny the Motion in its entirety.

Dated: September 6, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah
Plaintiff and Counter-Defendant,

## CERTIFICATE OF COMPLIANCE

The undersigned, Plaintiff and Counter-Defendant appearing in pro per, certifies that this brief contains 5,186 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 6, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah
Plaintiff and Counter-Defendant,